1
2

**DECLARATION OF EMILIE SAUNDERS**
**PURSUANT TO 28 U.S.C. §1746**

3    I, Emilie Saunders, have personal knowledge of the facts and matters discussed in this

4    declaration and, if called as a witness, could and would testify as follows:

5            1.      I am a citizen of the United States and am over eighteen (18) years of age.  I am

6
7    employed by the Federal Trade Commission ("FTC") as a Paralegal Specialist in the Bureau of

8    Consumer Protection.  I have been assigned to the FTC's Division of Financial Practices since

9    July 2018.

10           2.      My responsibilities at the FTC include investigating suspected violations of

11   consumer protection laws, including the FTC Act.  In the normal course of carrying out my

12   investigative responsibilities, I regularly use Internet search engines, electronic databases, and

13
14   other software-based investigative and organizational tools.

15           3.      I have been working on the Commission's investigation concerning Traffic Jam

16   Events, LLC and David Jeansonne II.  Collectively, Traffic Jam Events, LLC and David

17   Jeansonne II are the Defendants in this matter.

18           4.      As the custodian of documents and information collected in the course of this

19   investigation, I maintain all such evidence in my custody and control on a secure FTC server.

20   Below, I describe those documents and information.

21   **I.      CORPORATE FILINGS AND STATUS**

22
23           5.      The Defendants created legal entities by filing company records with the states of

24   Florida and Louisiana.  Florida and Louisiana allows the public to access, search for, and

25   download company records from state-run websites.  I obtained company records filed by the

26

Defendants through this process.  True and correct copies of company filings I obtained

regarding Traffic Jam Events, LLC are appended hereto as ***Attachment A-B***.

**A.     Traffic Jam Events**

6.      On August 29, 2007, Traffic Jam Events with registered with the Secretary of

State as a limited liability company.  Att. A.

7.      David Jeansonne II is identified as the registered agent and officer with the titles

of Manager and Member.  *Id.*  The street address for the registered agent and the domicile and

mailing address of the company is 2232 Idaho Avenue, Kenner, LA 70062.[1]  *Id.*

8.      On July 27, 2010, David Jeansonne II also registered Traffic Jam Events, LLC as

a fictitious name in Florida.  Att. B.  The application is signed by David Jeansonne II as the

owner and lists the mailing address of the business as 2020 Dickory Avenue, Ste 102, Harahan,

LA 70123.  *Id.*

**II.     INDIVIDUAL RESIDENCE**

9.      Using the public records database called LexisNexis Accurint, I searched for the

residential address of David Jeansonne II.  Accurint is a subscription-based database of

individual and corporate public records.  The most recent address for Mr. Jeansonne is in

Metairie, LA.  A true and correct copy of this record is available upon request.

**III.    LAW ENFORCEMENT ACTIONS**

10.     FTC staff learned that the Florida Attorney General sued Traffic Jam Events and

Mr. Jeansonne for alleged deceptive marketing, including the use of fake COVID-19 stimulus

mailers and checks, in *Office of the State Attorney General, et al. v. Traffic Jam Events, LLC, et*

*al.*, Case No. 20-CA-3536 (Fla. Cir. Ct., 13th Judicial Cir., Hillsborough Cty).  The Florida

---

[1] Mr. Jeansonne's name is correctly spelled as an officer but incorrectly spelled as Jeansonnc as the registered agent.

Attorney General also filed a motion for temporary injunction and subsequently amended its complaint.  True and correct copies of the motion for temporary injunction and amended complaint are attached respectively as **Attachment C** and **Attachment D**.

11.     During the investigation, FTC staff identified additional law enforcement actions against Defendants for deceptive advertising or marketing.

12.     FTC staff obtained documents from *State of Kansas v. Traffic Jam Events, LLC*, Case No. 10-C-1278 (Ks. Dist. Ct., Shawnee Cty).  The lawsuit alleged that Traffic Jam Events sent approximately 100,000 deceptive fliers misrepresenting that consumers won a grand prize to induce them to attend various auto sales events, among other things.  Traffic Jam Events entered into a consent judgment, paying a $25,000 monetary judgment and agreeing to be permanently enjoined committing the acts or practices alleged therein.  A true and correct copy of the 2010 consent judgment is attached hereto as **Attachment E**.

13.     FTC Staff also learned that Kansas again sued Traffic Jam Events in 2012 for using deceptive advertising and marketing in *State of Kansas v. Traffic Jam Events, LLC*, Case No. 12-CV-8191 (Ks. Dist. Ct., Johnson Cty).  On July 10, 2013, the court entered a consent judgment against Traffic Jam Events for violations of the Kansas Consumer Protection Act.  A true and correct copy of the 2013 consent judgment is attached hereto as **Attachment F**.

14.     As part of the 2013 consent judgment, Traffic Jam Events stipulated and agreed to the following facts:

> A.  Traffic Jam Events "operates as a marketing firm that provides services for client car dealers" and provides services as part of contracts denoted as "Staff Event Sale[s]."  Att. F ¶¶ 10-11.

3

B.   As part of those services, Traffic Jam Events creates and sends, or causes to be created and sent, direct mail advertising solicitations as well as radio and television spots.  *Id.* ¶ 12.

15.     As a result of the 2013 consent judgment, Traffic Jam Events is "permanently enjoined from entering into any consumer transactions originating within Kansas."  *Id.* ¶ 18.

16.     FTC Staff further learned that the State of Indiana sued Traffic Jam Events in 2018 for similar deceptive advertising and marketing in *State of Indiana v. Traffic Jam Events, LLC*, Cause No. 49D10-1806-PL-021546 (Ind. Marion Cty. Sup. Ct.).  A true and correct copy of the complaint is attached hereto as **Attachment G**.  On February 7, 2019, Traffic Jam Events entered into a consent agreement with Indiana.  A true and correct copy of the 2019 consent judgment is attached hereto as **Attachment H**.

17.     David Jeansonne II signed the consent agreement on behalf of Traffic Jam Events as its President.  Att. H.

**IV.   ADVERTISEMENTS**

18.     FTC staff conducted internet and social media searches relating to Defendants' Florida marketing campaign.  Using Google Maps, I searched the address identified in the notice: 5925 SW 20th St., Bushnell, FL 33513.  Google Maps shows an entrance to a lot with tents and cars.  A true and correct screen capture of Google Maps is attached hereto as **Attachment I**.

19.     In addition to the advertisement obtained from Florida's lawsuit, FTC staff also conducted internet and social media searches for advertising related to Defendants. Through these searches, FTC staff located at least one similar COVID-19 stimulus-related advertisement that may be associated with Defendants.

20.     The advertisement for an Alabama dealership uses a similar envelope that claims to be "TIME-SENSITIVE" and that direct recipients to "OPEN IMMEDIATELY" because it contains "ECONOMIC STIMULUS DOCUMENTS."  The mailer uses the same U.S. Postal Service permit number—Permit 11, Statesboro, GA—used by Defendants to mail their Florida marketing material.  An image of the advertisement taken from Twitter is attached hereto as **Attachment J**.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of June, 2020.

Emilie Saunders

# ATTACHMENT A

**State of Louisiana Secretary of State**

**COMMERCIAL DIVISION**
**225.925.4704**



Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

| Name | Type | City | Status |
|------|------|------|--------|
| TRAFFIC JAM EVENTS, LLC | Limited Liability Company | KENNER | Active |

**Previous Names**

| | |
|---|---|
| Business: | TRAFFIC JAM EVENTS, LLC |
| Charter Number: | 36529349K |
| Registration Date: | 8/29/2007 |

**Domicile Address**

2232 IDAHO AVE
KENNER, LA 70062

**Mailing Address**

2232 IDAHO AVE
KENNER, LA 70062

## Status

| | |
|---|---|
| Status: | Active |
| Annual Report Status: | In Good Standing |
| File Date: | 8/29/2007 |
| Last Report Filed: | 8/8/2019 |
| Type: | Limited Liability Company |

## Registered Agent(s)

| | |
|---|---|
| Agent: | DAVID JEANSONNC II |
| Address 1: | 2232 IDAHO AVE |
| City, State, Zip: | KENNER, LA 70062 |
| Appointment Date: | 8/29/2007 |

## Officer(s)
Additional Officers: No

| | |
|---|---|
| Officer: | DAVID JEANSONNE II |
| Title: | Manager, Member |
| Address 1: | 2232 IDAHO AVE |
| City, State, Zip: | KENNER, LA 70062 |

## Amendments on File (2)

| Description | Date |
|-------------|------|
| Appointing, Change, or Resign of Officer | 5/17/2012 |

Domestic LLC Agent/Domicile Change | 6/4/2018

**Print**

# ATTACHMENT B

# APPLICATION FOR REGISTRATION OF FICTITIOUS NAME

REGISTRATION# G10000069128

**Fictitious Name to be Registered:**  TRAFFIC JAM EVENTS, LLC

**Mailing Address of Business:**     2020 DICKORY AVE., STE 102
                                     HARAHAN, LA  70123

**Florida County of Principal Place of Business:** MULTIPLE

**FEI Number:**  01-0904522

**Owner(s) of Fictitious Name:**

    JEANSONNE, DAVID
    2020 DICKORY AVE., STE 102
    HARAHAN, LA  70123

**FILED**
**Jul 27, 2010**
**Secretary of State**

I the undersigned, being an owner in the above fictitious name, certify that the information indicated on this form is true and accurate. I further certify that the fictitious name to be registered has been advertised at least once in a newspaper as defined in Chapter 50, Florida Statutes, in the county where the principal place of business is located.  I understand that the electronic signature below shall have the same legal effect as if made under oath.

DAVID JEANSONNE                                        07/27/2010
_____        _____
  Electronic Signature(s)                                    Date

**Certificate of Status Requested (  )        Certified Copy Requested (  )**

# ATTACHMENT C

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN HILLSBOROUGH COUNTY, FLORIDA
- CIVIL DIVISION -**

**OFFICE OF THE ATTORNEY GENERAL,
STATE OF FLORIDA,
DEPARTMENT OF LEGAL AFFAIRS,**

       Plaintiff,                        **CASE NO:**
**v.**                                    **DIVISION:**

**TRAFFIC JAM EVENTS, LLC, a Louisiana
Limited Liability Company; and
DAVID J. JEANSONNE, II, an individual,**

       Defendants.

_____/

## PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTION

Plaintiff, Office of the Attorney General, State of Florida, Department of Legal Affairs (the "Attorney General"), by and through the undersigned counsel, moves for temporary injunctive relief pursuant to Section 501.207(3), Florida Statutes, and Rule 1.610 of the Florida Rules of Civil Procedure, and in support thereof states as follows:

Defendants unapologetically seek to capitalize on the vulnerability, confusion and fear plaguing Florida consumers during the novel coronavirus (COVID-19) pandemic. The same week that the federal stimulus package was being discussed in Congress, Defendants developed a "COVID-19 Stimulus" direct mail solicitation, purporting to offer consumers over $3300 in stimulus relief due to COVID-19.

These false, deceptive and unfair solicitations bear the indicia of a government-related program and go so far as to include a realistic "stimulus" check that appears to be written on the account of the "Stimulus Relief Program." These materials sent by Defendants to Florida consumers falsely purport to have COVID-19 relief funds available to consumers to be redeemed at a designated stimulus temporary relief site. According to the documents sent by Defendants, the available funds are affiliated with a COVID-19 automotive stimulus program, and the funds are available to consumers to purchase a vehicle. The purported "stimulus" is simply a misleading and deceitful promotion intended to lure consumers to purchase used cars at a tent sale. In reality, the "stimulus" offered by Defendants has no value at all.

The requested temporary injunction is to prevent Traffic Jam Events, LLC and David J. Jeansonne, II from using the global pandemic caused by COVID-19 to their economic advantage by sending false, deceptive and/or unfair solicitations related to the COVID-19 Stimulus to Florida consumers. More specifically, the Attorney General seeks the temporary injunction to prevent continuing injury to consumers, and to preserve the Court's ability to provide relief to Florida consumers under the provisions of the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes ("FDUTPA"). Simultaneously, with this Motion, the Attorney General has also filed a Complaint seeking injunctive relief, consumer restitution, civil penalties, attorney's fees and costs, and other statutory and equitable

2

relief against defendants Traffic Jam Events, LLC ("Traffic Jam Events"), and David Jeansonne, II ("Jeansonne") (collectively, the "Defendants").

## OVERVIEW OF REQUESTED RELIEF

The Attorney General seeks an order enjoining the Defendants, their agents, and those persons acting in concert or participation with Defendants in furtherance of Defendants' false, deceptive and unfair solicitations to consumers and business practices as related to COVID-19 stimulus relief funds, who receive actual notice of the injunction from:

1. Representing and/or implying that COVID-19 stimulus funds, including but not limited to funds available under the Coronavirus Aid, Relief, and. Economic Security ("CARES") Act are being offered by Defendants or any car dealership with which they work;

2. Representing and/or implying that Defendants or any car dealership with which they work are affiliated with, supported by, endorsed by, certified by, licensed by, in partnership with, or an agent of any government agency for the purpose of offering COVID-19 stimulus relief funds or other government relief funds related to COVID-19;

3. Sending or otherwise providing fake, counterfeit, or misleading checks to consumers that purport to relate to the CARES Act, COVID-19 stimulus relief funds, or any other stimulus or other government relief

3

funds related to COVID-19;

4.      Representing and/or implying that any government COVID-19 stimulus relief can only be used towards the purchase of vehicles or other products or services sold by the Defendants or any car dealership with which they work, or that any portion of government COVID-19 stimulus relief funds is being provided to consumers to purchase a vehicle;

5.      Representing and/or implying that the Attorney General reviews or approves of past, present or future solicitations to consumers; sales practices; or direct mail solicitations; and

6.      Any other injunctive relief or equitable remedies pursuant to Section 501.207(3), Florida Statutes, as this Court deems necessary and proper.

## BACKGROUND

Consumers throughout the state of Florida are experiencing economic hardships as a result of the COVID-19 global pandemic. In an effort to stimulate the economy and assist struggling Americans during this fraught and difficult time, the United States federal government passed the two trillion-dollar ($2,000,000,000,000) Coronavirus Aid, Relief, and Economic Security Act (referred to as the "CARES Act" and also widely referred to as "COVID-19 Stimulus") on March 27, 2020.  Under the CARES Act, certain qualifying Americans will receive

4

stimulus checks from the federal government.  On or around the date of the passing of the CARES Act, and in a deceptive and unfair attempt to elicit used-car sales, Defendants sent consumers mailer advertisements that purport to include COVID-19 Stimulus related documents, and falsely informed consumers that they could access their COVID-19 Stimulus relief by attending the tent sale event promoted and staffed by Defendants. Through this Motion the Attorney General seeks to halt Defendants' false, deceptive and unfair advertisements and solicitations related to COVID-19 Stimulus relief funds to Florida consumers immediately, including but not limited to actual offers of COVID-19 Stimulus funds.

Traffic Jam Events is a Louisiana-based limited liability marketing company focused on the automotive industry.[1]  Though it has not properly registered to do business with the Florida Secretary of State, Traffic Jam Events' national sales office is located in Tampa, Florida, and multiple employees or agents of Traffic Jam Events reside and work in Florida.  Further, Traffic Jam Events offers direct-mail advertising campaigns, staffed events such as tent sales ("Tent Sales") during which vehicles are sold to consumers.  Traffic Jam Events offers the above-referenced services to Floridians and Florida businesses, and ultimately creates marketing campaigns and sales events directed at Florida consumers.

---

[1] To the extent not attached hereto, evidence supporting the facts asserted herein shall be provided to the Court in advance of any hearing on this Motion.

Traffic Jam Events' at issue direct-mail marketing campaign sent to consumers by mail included an oversized envelope containing a document purporting to provide information about the COVID-19 stimulus program with an identifying "Notice No." (the "Notice"), and a "check" purporting to come from the "Stimulus Relief Program" (the envelope, Notice and check are collectively referred to herein as the "COVID-19 Stimulus Mailer").[2]

On the outside of the envelope, appears the following language in bold-face type: "**IMPORTANT COVID-19 ECONOMIC STIMULUS DOCUMENT ENCLOSED**" and "**TIME-SENSITIVE FAST-TRACKED MAIL: OPEN IMMEDIATELY**."  At the top of the Notice, the COVID-19 Stimulus Mailer also states in bold: "**URGENT: COVID-19 ECONOMIC AUTOMOTIVE STIMULUS PROGRAM RELIEF FUNDS AVAILABLE · ALL PAYMENTS DEFERRED FOR 120 DAYS**."  The Notice also includes what appears to be a bar code and what appears to be a government seal in the background.  See excerpt below:

---

[2] A true and correct copy of the COVID-19 Stimulus Mailer is attached to this Motion as **Exhibit A**.



**URGENT: COVID-19 ECONOMIC AUTOMOTIVE STIMULUS PROGRAM**
**RELIEF FUNDS AVAILABLE • ALL PAYMENTS DEFERRED FOR 120 DAYS**

**Eligible Dates:**
**March 27th thru**
**April 5th, 2020**

```
COVID-19 STIMULUS (INDIVIDUAL)
NOTICE NO. FB02-021225-096781
```

```
DATE:            03/25/20
NOTICE NO:       FB02-021225-096781
ACCOUNT TYPE:    COVID-19 STIMULUS (INDIVIDUAL)
DESCRIPTION:     URGENT NOTICE - READ IMMEDIATELY
```

The Notice further references:

- **"A special COVID-19 Economic Automotive Stimulus Program relief funds and other incentives will be held at 5925 SW 20th St., Bushnell, FL 33513, across the street from Walmart, March 27th through April 5th, 2020.";**
- "Stimulus Temporary 10-day Relief Site: 5925 SW 20th St. Bushnell, FL 33513"; and
- "You must claim these stimulus incentives at your designated temporary 10-day site: 5925 SW 20th St., Bushnell, FL 33513."

Further, the Notice lists the following "mandatory qualifications to receive Stimulus Relief Funds:" 1) must be permanent US resident; 2) must have a valid driver license; and 3) annual income cannot exceed $91,300.

The COVID-19 Stimulus Mailer also includes what appears to be a check issued by "Stimulus Relief Program" in the amount of $3,344.68, and the memo field of the check states "COVID-19 AUTO STIMULUS."   See image below:

7



Finally, the Notice also states that "Thousands in Relief Funds with this notice. Receive additional discounts on your vehicle purchase – check the enclosed documentation for your funds."

The COVID-19 Stimulus Mailer does not clearly state who is the sender, nor does it clearly convey that the stimulus relates to a used car Tent Sale. Rather, the COVID-19 Stimulus Mailer gives the false net impression that it was sent by an official government agency and includes a stimulus check issued by the government to be used for the purchase of a vehicle. Upon information and belief, neither the Defendants, nor the dealership with which Defendants worked in connection with the Bushnell, Florida Tent Sale, are affiliated with, supported by, endorsed by, or in

partnership with any US government agency for the purposes of COVID-19 Stimulus relief efforts.

Defendants created the COVID-19 Stimulus Mailer, identified the Florida consumers to whom the COVID-19 Stimulus Mailer would be sent, and paid for the COVID-19 Stimulus Mailer all in order to drive traffic to a Tent Sale in Bushnell, Florida. According to information reviewed by the Attorney General, Defendants sent the COVID-19 Stimulus Mailer to tens of thousands of consumers.

As recently as March of 2020, Defendants emphasized to at least one car dealership in Florida that the COVID-19 Stimulus Mailer was legal and effective. Given their stated business of offering and using promotions to attract consumers to Tent Sales, and their recent statement that the COVID-19 Stimulus Mailer is legal and effective, Defendants are likely to continue to use the COVID-19 Stimulus Mailer or a similar COVID-19 stimulus promotion to mislead and confuse consumers throughout Florida if an injunction is not entered. Indeed, the Attorney General possesses information indicating that Defendants planned another event using COVID-19-related direct mail solicitations.

Consumer complaints filed with the Attorney General and the Better Business Bureau (the "BBB") also show that the deceptive and unfair business practices evidenced by the COVID-19 Stimulus Mailer are not an isolated occurrence. Defendants have a history of using false and deceptive advertising mailers to lure

9

consumers to Tent Sales. Complainants generally allege that consumers received advertisement mailers stating that the consumer had won a prize, such as a gift card, cash, or a free car or iPhone.  Consumers are required to physically attend a Tent Sale to claim their "winnings".  Several consumers stated that they attempted to claim their "prizes" only to then be told that they had to make a purchase or provide personal information, such a social security card number, before being able to collect.

Given the Defendants' past and current business practices with regard to advertising mailers, an immediate injunction is critically necessary to halt Defendants' false and deceptive use of the COVID-19 Stimulus Mailer, or a similar mailer related to the COVID-19 Stimulus.  An injunction is necessary to protect consumers from Defendants' continued deceptive and unfair business practices, and to prevent others from being harmed by Defendants' egregious conduct.

Traffic Jam Events has also made false claims that the Attorney General reviews all of its mailings, which (according to Traffic Jam Events) amounts to 400,000 mail pieces to consumers in a month.  Specifically, a car dealership received notice of a consumer complaint submitted to the Better Business Bureau ("BBB") and discussed the issue with Traffic Jam Events, which created the direct mail piece and staffed the Tent Sale event that was the subject of the complaint.  By way of response, Traffic Jam Events informed the car dealership that the attorney general

10

reviews all of the direct mail pieces used by Traffic Jam Events.  This false information was passed from Traffic Jam Events to the car dealership, which ultimately passed the information to the BBB.  However, the Attorney General does not review or approve direct mail campaigns, including Traffic Jam Events' solicitations to consumers.  An injunction is necessary to prevent such false and deceptive statements and to avoid consumer confusion or harm based on such false statements.

## I.    <u>APPLICABLE LAW</u>

This action is brought under the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes. The Attorney General is the enforcing authority of FDUTPA.  The purpose of FDUTPA is to "protect the consuming public . . . from those who engage in . . . unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce."  Section 501.202(2), Florida Statutes.  Violations of FDUTPA may be based on violations of "any law, statute, rule, regulation, or ordinance which proscribes . . . unfair, deceptive or unconscionable acts or practices." Section 501.203(3)(c), Florida Statutes.

Defendants operate a marketing company, specializing in the automotive industry, that creates and distributes direct mail solicitations to Florida consumers in an effort to drive consumers to Tent Sales.  Defendants also provide logistical support and staffing for the Tent Sales where they sell cars in conjunction with car

11

dealerships.  Upon information and belief, Defendants also provide direct mail design and mailing strategies to business customers.  Therefore, Defendants are engaged in "trade or commerce," defined by FDUTPA as "the advertising, soliciting, providing, offering or distributing . . . of any good or service, or any property . . . or thing of value." Section 501.203(8), Florida Statutes.  Defendants' acts fall within the purview of FDUTPA.

### A.    Applicable Standard for Temporary Injunctive Relief

Rule 1.610 of the Florida Rules of Civil Procedure authorizes injunctive relief upon an appropriate showing.  It is well-established that, under FDUTPA, the enforcing authority – here the Attorney General – may obtain temporary injunctive relief based simply upon a showing of a clear legal right:

> However, because section 501.207(1)(b) expressly authorizes the Department to seek injunctive relief on behalf of the state, the Department does not have to establish irreparable harm, lack of an adequate legal remedy or public interest. ***The Department's sole burden at a temporary injunction hearing under FDUTPA is to establish that it has a clear legal right to a temporary injunction***.

*Millennium Commc'ns & Fulfillment, Inc. v. Off. of Atty. Gen., Dep't of Legal Affairs, State of Fla.,* 761 So. 2d 1256, 1260 (Fla. 3d DCA 2000) (emphasis added; citations omitted); *see also*, *U.S. v. Sene X Eleemosynary Corp., Inc*., 479 F. Supp. 970, 981 (S. D. Fla. 1979) (holding that where the government is authorized by statute to seek injunctive relief, proof of irreparable harm need not be

established, and the government is not bound to prove the absence of an adequate remedy at law). The enforcing authority establishes a clear legal right by demonstrating a substantial likelihood of success on the merits. *Office of the Attorney Gen. v. Bilotti*, 267 So. 3d 1, 3 (Fla. 4th DCA 2019). A substantial likelihood of success on the merits is established in a deception-based FDUTPA action by showing that "the practice was likely to deceive a consumer acting reasonably in the same circumstances." *Bilotti*, 267 So. 3d at 3 (quoting *Office of the Attorney Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. 1st DCA 2004)).

In particular, "[a]dvertising deception is evaluated from the perspective of the reasonable prospective purchaser, that is, a reasonable consumer in the audience targeted by the advertisement." *FTC v. Washington Data Res.*, 856 F.Supp.2d 1247, 1272 (M.D. Fla. 2012).[3] Express claims are presumed material, s*ee FTC v. Pantron*

---

[3] The Florida Legislature expressly provided that a key purpose of FDUTPA is to "make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection." § 501.202(3), Florida Statutes; *see also Taubert v. State,* 79 So. 3d 77, 79 (Fla. 1st DCA 2011). In furtherance of this express intent, the Florida Legislature also adopted "the standards of unfairness and deception set forth and interpreted by the Federal Trade Commission [FTC] or the federal courts" for determining whether acts and practices are a violation of FDUTPA. Fla. Stat. § 501.203(3)(b); *see also Millennium*, 761 So. 2d at 1263. Finally, FDUTPA states that it is the legislative intent that in construing Section 501.204(1), Florida Statutes, "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and federal court interpretations of [section] 5(a)(1) of the [FTC] Act, 15 U.S.C. § 45(a)(1)." Fla. Stat. § 501.204(2) (2019); *see also Millennium Commc'ns & Fulfillment, Inc. v. Off. of Atty. Gen., Dep't of Legal Affairs, State of Fla.*, 761 So.2d 1256, 1263 (Fla. 3d DCA 2000) ("Since FDUTPA is the state counterpart to the [FTC] Act, in deciding whether an act or practice may be deemed deceptive, we must give due consideration and great weight to the interpretations made by the [FTC] and the federal courts.).

*I Corp.*, 33 F.3d 1088, 1095-96 (9th Cir. 1994); *FTC v. NPB Advertising, Inc.*, 218 F.Supp.3d 1352, 1358 (M.D. Fla. 2016), and consumer action based on express statements is presumptively reasonable. *See e.g.*, *FTC v. Five-Star Auto Club, Inc.*, 97 F.Supp.2d 502, 528 (S.D. N.Y. 2000) (citations omitted).

In considering whether a claim is deceptive, a court cannot rest on the literal truth or falsity of the representation but must consider the "net impression" on consumers. *See e.g.*, *FTC v. Simple Health Plans LLC*, 379 F.Supp.3d 1346, 1360 (S.D. Fla. 2019); *FTC v. Capital Choice Consumer Credit, Inc*., Case No. 02-21050, 2004 WL 5149998 (S.D. Fla. Feb. 20, 2004); *FTC v. Atlantex Assocs*., Case No. 87-0045, 1987 WL 20384, *11 (S.D. Fla. Nov. 25, 1987); *see also FTC v. Tashman*, 318 F.3d 1273, 1283 (11th Cir. 2003); *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1497 (1st Cir. 1989); *FTC v Cyberspace.com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006); *American Home Products v. FTC*, 695 F.2d 681, 687 (3d Cir.1982).

The net impression of the COVID-19 Stimulus Mailer is that it was sent by an official government agency and includes a stimulus check issued by the federal government to be used for the purchase of a vehicle.  A reasonable prospective purchaser who receives the COVID-19 Stimulus Mailer could believe they are being offered official government COVID-19 Stimulus funds when, in fact, they are being lured to a used-car Tent Sale.  As set forth above, the enforcing authority establishes

14

a clear legal right by showing that "the practice was likely to deceive a consumer acting reasonably in the same circumstances." *Bilotti*, 267 So. 3d at 3 (quoting *Office of the Attorney Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. 1st DCA 2004)).

Additionally, false statements that the Attorney General reviews or approves Defendants' marketing campaigns has the potential to further bolster a consumer's net impression that is based upon Defendants' false, deceptive and misleading communications. Defendants' deceptions clearly violate FDUTPA and, consequently, the Attorney General has a clear legal right to a temporary injunction.

**B.      Even Though it is Not Required, the Attorney General Has Met the Remaining Requirements for a Temporary Injunction**

Notwithstanding that the Attorney General is only required to show a clear legal right to obtain a temporary injunction, the facts set forth herein establish that: 1) a substantial likelihood of ongoing immediate irreparable harm to the public exists if the injunction is denied; 2) no adequate remedy at law exists for these victims; 3) the Attorney General has a substantial likelihood of success on the merits (clear right to legal relief); 4) the threatened injury to these victims clearly outweighs any possible harm to Defendants; and 5) that this action is in the public interest. *See Naegele Outdoor Advertising v. City of Jacksonville,* 659 So.2d 1046 (Fla. 1995). The Attorney General can meet each of these elements, and a temporary injunction should be issued to ensure that Defendants cannot profit from this

15

global pandemic by sending false, misleading and deceptive communications to consumers, and to prevent Defendants from making false, misleading and deceptive statements about the Attorney General reviewing Defendants' materials.

The potential irreparable harm from Defendant's egregious conduct is ongoing and immediate. Upon information and belief, over at least the past three years, Defendants have frequently used mailer advertisements to lure consumers to Tent Sales with the false and/or deceptive promise of prizes, cash or other rewards. Typically, to receive the prizes, the consumers are required to attend the "Tent Sale" in person, and at the Tent Sale the consumer is required to make a purchase or provide personal information to collect the prize. This appears to be the way in which the Defendants conduct their Tent Sales and the business practice is not isolated to the sale promoted by COVID-19 Stimulus Mailer. Therefore, in light of the Defendants' past and ongoing conduct as related to written solicitations to consumers for Tent Sales and their recent deceptive use of the COVID-19 Stimulus Mailer, there is a substantial likelihood that Defendants will try again to capitalize on this devastating global pandemic and there will be ongoing irreparable harm to the public.

Further, a remedy at law would not be adequate here. A money judgment would not stop the conduct of the Defendants or protect Florida citizens and others from the Defendants' conduct. An injunction is needed to stop the Defendants from

soliciting consumers using false and/or deceptive representations related to the COVID-19 Stimulus.

Finally, the Defendants will suffer no harm if the COVID-19 Stimulus Mailer, or similar solicitations, are banned while the countervailing benefit of protecting consumers clearly weighs heavily. The Defendants will still have the opportunity to create and send advertisements that do not mislead or deceive consumers. Nor are Defendants harmed if banned from making false statements regarding the Attorney General and any implied approval of marketing materials.

Finally, it is undisputed that the Attorney General's Office is a public agency, tasked with the protection of the public; therefore, this action serves the public interest. The public's interest in preventing Defendants from continuing to perpetuate consumer harm far outweighs any private interest that Defendants may have in continuing to perpetuate that harm.

### C.   No Bond is Required

In this case, a bond should not be required because the requested injunction serves the public interest and the petitioning party is a state agency. *See Sunplus Credit, Inc. v. Office of the Attorney General*, 752 So. 2d 1225, 1227 (Fla. 4th DCA 2000) ("Florida Rule of Civil Procedure 1.610(b) provides that when an injunction is issued on the pleading of any state agency, the court may require or dispense with a bond. Fla. R. Civ. P. 1.610(b)."). Moreover, an action for injunctive

17

relief by the state pursuant to Section 501.207(1)(b), Florida Statutes, shall be issued without bond.  *See* Fla. Stat. § 60.08.

## II.   <u>**RELIEF SOUGHT**</u>

Due to the serious and ongoing nature of these violations, as previously set forth herein, the Attorney General seeks an injunction prohibiting Defendants, their employees, agents, representatives, or any other person or entity acting through or on their behalf from:

1.   Representing and/or implying that COVID-19 stimulus funds, including but not limited to funds available under the CARES Act are being offered by Defendants or any car dealership with which they work;

2.   Representing and/or implying that Defendants or any car dealership with which they work are affiliated with, supported by, endorsed by, certified by, licensed by, in partnership with, or an agent of any government agency for the purpose of offering COVID-19 stimulus relief funds or other government relief funds related to COVID-19;

3.   Sending or otherwise providing fake, counterfeit, or misleading checks to consumers that purport to relate to the CARES Act, COVID-19 stimulus relief funds, or any other stimulus or other government relief funds related to COVID-19;

18

4.   Representing and/or implying that any government COVID-19 stimulus relief can only be used towards the purchase of vehicles or other products or services sold by the Defendants or any car dealership with which they work, or that any portion of government COVID-19 stimulus relief funds is being provided to consumers to purchase a vehicle;

5.   Representing and/or implying that the Attorney General reviews or approves of past, present or future solicitations to consumers; sales practices; or direct mail solicitations; and

6.   Any other injunctive relief or equitable remedies pursuant to Section 501.207(3), Florida Statutes, as this Court deems necessary and proper.

WHEREFORE, the Attorney General respectfully requests that this Court grant the relief sought through this Motion, including the entry of a temporary injunction.

Dated this 23rd day of April 2020.

Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL

**/s/ Jennifer Hayes Pinder**
JENNIFER HAYES PINDER
Senior Assistant Attorney General
Florida Bar #017325
Email: jennifer.pinder@myfloridalegal.com

19

ELIZABETH LESTER MARTIN
Assistant Attorney General
Florida Bar # 116422
Email: elizabeth.martin@myfloridalegal.com

Department of Legal Affairs
Office of the Attorney General
3507 E. Frontage Road; Suite 325
Tampa, Florida 33607
Telephone (813) 287-7950
Facsimile (813) 281-5515

20

# COMPOSITE EXHIBIT A
## To Plaintiff's Motion
## For Temporary Injunction

PRSRT MARKETING
U.S. POSTAGE
**PAID**
PERMIT 11
STATESBORO, GA

# TIME-SENSITIVE FAST-TRACKED MAIL: OPEN IMMEDIATELY

**TIME-SENSITIVE CONTENTS:**
**OPEN IMMEDIATELY.**

Contents must be packed securely to ensure safe, on-time delivery. Package is tracked nationwide. No liquids allowed.
**DO NOT BEND OR BREAK.**

# IMPORTANT COVID-19 ECONOMIC STIMULUS DOCUMENT ENCLOSED

400 06205 0805 0714 1007 0516 55358

Postmaster: Please Deliver By March 26 - March 27, 2020

վիկիպՄիկՄիՄ||ՄՄ|Մ||ՄՄ|||Մ|Մ||Մ|Մ|

S60  P3  ************ECRWSS**R084

16152

TO

me (Please Print)

dress

y   Oxford

State   FL

ZIP   34484-3409

**ME-SENSITIVE FAST-TRACKED MAIL: OPEN IMMEDIATELY**

CIAL DOCUMENTS ENCLOSED

ot tamper or mutilate.

DO NOT BEND



400 06205 0805 0714 1007 0516 55358

# URGENT: COVID-19 ECONOMIC AUTOMOTIVE STIMULUS PROGRAM
## RELIEF FUNDS AVAILABLE • ALL PAYMENTS DEFERRED FOR 120 DAYS

# Eligible Dates: March 27th thru April 5th, 2020



COVID-19 STIMULUS (INDIVIDUAL)
NOTICE NO. FB02-021225-096781

```
DATE:            03/25/20
NOTICE NO:       FB02-021225-096781
ACCOUNT TYPE:    COVID-19 STIMULUS (INDIVIDUAL)
DESCRIPTION:     URGENT NOTICE - READ IMMEDIATELY
```

Dear Florida residents,

**A special COVID-19 Economic Automotive Stimulus Program with relief funds and other incentives will be held at 5925 SW 20th St., Bushnell, FL 33513, across the street from Walmart, March 27th thru April 5th, 2020.** This program has been established to help local residents purchase automobiles with 120 days until first payment during these challenging times with special discounts, credit and finance opportunities to drastically reduce your out-of-pocket costs.

At the specified relief headquarters, the following incentives may be available to ALL residents of Bushnell, FL:

- **0% A.P.R. financing for 60 months.** A variety of vehicles (cars, trucks, SUVs, etc.) will have 0% A.P.R. financing available with little to no money down. (1)
- **All payments will be deferred for 120 days.** Do not make a car payment for 120 days/4 months. (2)
- **Receive a $100 Walmart Gift Card with every vehicle purchase.** Extra funds to be used for any other needs you may have during this time. (3)
- **Thousands in Relief Funds with this notice.** Receive additional discounts on your vehicle purchase – check the enclosed documentation for your funds.

**You must claim these stimulus incentives at your designated temporary 10-day site: 5925 SW 20th St., Bushnell, FL 33513, across the street from Walmart.** Bring this notice to collect all of these program benefits toward your vehicle purchase.

**Please bring this notice to your designated local headquarters:**

# 5925 SW 20th St. Bushnell, FL 33513 Across the street from Walmart!

Eligible dates: March 27th thru April 5th, 2020
Monday–Saturday:
9:00am until all attendees have been assisted.
Sunday:
11:00am until all attendees have been assisted.

Look for the set-up tents and speak to an event representative upon your arrival.

**MAP OF TEMPORARY 10-DAY RELIEF SITE:**



# URGENT COVID-19 ECONOMIC AUTOMOTIVE STIMULUS PROGRAM
## RELIEF FUNDS AVAILABLE • ALL PAYMENTS DEFERRED FOR 120 DAYS

**Mandatory qualifications to receive Stimulus Relief Funds:**
1) Must be permanent U.S. resident.
2) Must have valid driver's license.
3) Annual Income cannot exceed $91,300.00.

This COVID-19 Economic Automotive Stimulus Program will include hundreds of quality, clean cars, trucks, vans and SUVs from participating dealerships in the area. Bring this notice to the relief temporary 10-day site at 5925 SW 20th St., Bushnell, FL 33513, across the stree from **Walmart** and choose any of the available vehicles. Here are a couple examples of the more popular vehicles in-stock - with hundreds more available:

| Mercedes-Benz M-Class $0 down $116 per mo. (4) | Nissan Versa $0 down $133 per mo. (5) |
|---|---|

• **0% A.P.R. financing for 60 months.** A variety of vehicles (cars, trucks, SUVs, etc.) will have 0% A.P.R. financing available with little to no money down. (1)
• **All payments will be deferred for 120 days.** Do not make a car payment for 120 days/4 months. (2)
• **Receive a $100 Walmart Gift Card with every vehicle purchase.** Extra funds to be used for any other needs you may have during this time. (3)
• **Thousands in Relief Funds with this notice.** Receive additional discounts on your vehicle purchase – check the enclosed documentation for your funds.

## Stimulus Temporary 10-Day Relief Site:
## 5925 SW 20th St. • Bushnell, FL 33513
## Across the street from Walmart !

Eligible dates: March 27th thru April 5th, 2020
Monday–Saturday:
9:00am until all attendees have been assisted.
Sunday:
11:00am until all attendees have been assisted.
Look for the set-up tents and speak to an event representative upon your arrival.

**MAP OF TEMPORARY 10-DAY RELIEF SITE:**



DATE: 03/25/20
NOTICE NO: FB02-021225-096781
ACCOUNT TYPE: COVID-19 STIMULUS (INDIVIDUAL)

(1) 0% APR available on select models for up to 60 months financing subject to lender's approval with approved credit. (2) No payments for 120 days subject to lender's approval with approved credit. Interest accrues from date of purchase. (3) Receive one (1) $100 gift card to Walmart with any vehicle purchase during the event dates. (4) $0 down, plus tax, title and license '$116 per month example: 2009 Mercedes-Benz M-Class stk#TRA26442 sale price $7,399 72 months at 3.9% APR with approved credit. (5) $0 down, plus tax, title and license. '$133 per month example: 2018 Nissan Versa stk#MAR09604 sale price 28,489 72 months at 3.9% APR with approved credit. New Wave Auto Sales employees and associates, mail house, associated sponsors or agencies, and their family members and members of same household are ineligible. Addressee must redeem original mail piece in person by close of business on April 5th, 2020. Vehicles are subject to prior sale. Void where prohibited by law. All offers end April 5th, 2020.

**STIMULUS RELIEF PROGRAM**
5925 SW 20th St. • Bushnell, FL 33513

021225

THE SUM
UP TO:
THREE THOUSAND THREE HUNDRED
FORTY-FOUR DOLLARS AND 68/100*************

**$ 3,344.68***

DOLLARS

MEMO: COVID-19 AUTO STIMULUS

_GL. Taylor_
AUTHORIZED SIGNATURE

::002   :12 :021225:503   1132   98::

STIMULUS RELIEF PROGRAM

021225

| Date | Type | Reference | Original Amt. | Balance Due | Payment |
|------|------|-----------|---------------|-------------|---------|
| 03/25/20 | Stimulus Fund | BUSHN-021225 | 3,344.68 | 0.00 | 3,344.68 |

STIMULUS RELIEF PROGRAM

week ending 04/05/2020        3,344.68
FOR RECIPIENT'S RECORDS

021225

# ORIGINAL DOCUMENT

Void where prohibited. Certificate has no cash value. Non-negotiable certificate. The certificate is not a check. Only valid if presented upon registration. Amount good toward select pre-owned vehicles. Cannot be used in conjunction with any other offers. Expires June 8th, 2020.

ENDORSE HERE

DO NOT WRITE, STAMP OR SIGN BELOW THE LINE
RESERVED FOR FINANCIAL BANK USE

# ATTACHMENT D

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN HILLSBOROUGH COUNTY, FLORIDA
- CIVIL DIVISION -

OFFICE OF THE ATTORNEY GENERAL,
STATE OF FLORIDA,
DEPARTMENT OF LEGAL AFFAIRS,

      Plaintiff,                        **CASE NO: 20-CA-3536**

v.                                      **DIVISION: L**

TRAFFIC JAM EVENTS, LLC, a Louisiana
Limited Liability Company; and
DAVID J. JEANSONNE, II, an individual,

      Defendants.

_____/

## AMENDED COMPLAINT

Plaintiff, Office of the Attorney General, State of Florida, Department of Legal Affairs (the "Attorney General" or "Plaintiff"), sues Defendants, Traffic Jam Events, LLC, a Louisiana limited liability company ("Traffic Jam") and David J. Jeansonne, II, an individual ("Jeansonne") (collectively, "Defendants"), and respectfully alleges the following:

## INTRODUCTION

1.     While the entire world faces a global pandemic due to COVID-19, the Defendants in this action have attempted to use the pandemic to their economic advantage by, among other things, sending out false, deceptive and unfair solicitations to Florida consumers (i) falsely purporting to have COVID-19 relief funds available to consumers, (ii) advertising that consumers can claim stimulus

funds at a designated stimulus temporary relief site, (iii) falsely claiming that the available funds are affiliated with a COVID-19 automotive stimulus program, and that Defendants have relief funds available for the purchase of a car; and (iv) including purported COVID-19 "stimulus checks." All of the above acts were performed to lure consumers to purchase used cars at a tent sale in Bushnell, Florida.

2.      Due to its unfair and deceptive nature the Attorney General seeks to halt this scam, and any similar future scam by the Defendants, and seeks all appropriate relief pursuant to the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes ("FDUTPA"). Further, Defendants have made false representations that the Attorney General reviews its marketing materials, leaving the false impression that the Attorney General approves these unfair, deceptive and misleading advertising communications. Through this action, the Attorney General also seeks to prohibit Defendants from making such unfounded, false, and misleading representations.

## JURISDICTION AND VENUE

3.      This is an action for injunctive relief, consumer restitution, civil penalties, attorney's fees and costs, and other statutory and equitable relief against Defendants, brought pursuant to FDUTPA.

4.      This Court has subject matter jurisdiction pursuant to the provisions of FDUTPA. The Attorney General seeks relief in an amount greater than Thirty

Thousand Dollars ($30,000), exclusive of fees and costs.

5.      The statutory violations alleged in this amended complaint ("Complaint") occurred in, and/or affect, more than one judicial circuit, including Hillsborough County, Florida.

6.      Venue is proper in the Thirteenth Judicial Circuit, as Defendants conduct business in Hillsborough County, Traffic Jam claims that its national sales office is located in Hillsborough County, and to the best of the Attorney General's knowledge, the acts and practices set forth herein originated, in part, from Hillsborough County, Florida.

7.      The Attorney General has conducted an investigation into the matters alleged herein, and the head of the enforcing authority has determined that this enforcement action serves the public interest, as required by Section 501.207(2) of the Florida Statutes.

8.      All conditions precedent to this action have been performed or have occurred within four (4) years of the filing of this action.

## PARTIES

9.      The Attorney General is an enforcing authority of Chapter 501, Part II, Florida Statutes, and is authorized to bring this action seeking equitable, injunctive and other statutory relief, including restitution and civil penalties, pursuant to FDUTPA.

3

10.     Traffic Jam is registered as a Louisiana limited liability company with David Jeansonne, II listed as the managing member and registered agent,[1] having an address of 2232 Idaho Ave., Kenner, LA 70062.

11.     Traffic Jam Events, LLC, is a fictitious name that was filed with the Florida Secretary of State on July 27, 2010 by Jeansonne as the owner; however, the fictitious name registration expired in 2015.  Traffic Jam is not registered to do business with the Florida Secretary of State, but upon information and belief, Traffic Jam has its national sales office in Hillsborough County, Florida where it holds itself out to the public.

12.     Various agents of Traffic Jam, including its Vice President of Sales, Sales Manager, and multiple territory managers reside and work in Florida, upon information and belief.

13.     Jeansonne is an individual residing in Louisiana.

14.     Upon information and belief, Jeansonne is the owner and president of Traffic Jam, and as president he participates in and manages, operates, and controls the operations of Traffic Jam.

15.     Upon information and belief, Jeansonne is involved in making key and relevant decisions related to (i) the creation, messaging, production, printing, and mailing of direct-mail solicitations to Florida consumers, and (ii) logistics

---

[1] Louisiana corporate records for Traffic Jam reflect a typo, listing the registered agent's name as David Jansonnc II.

4

related to the tent sales promoted by the direct-mail solicitations at issue in this action, including when and where the tent sales would take place.

16.    Upon information and belief, during times material to this action Jeansonne has traveled to Florida to conduct Traffic Jam's business.

17.    At all times material hereto, Defendants engaged in "trade or commerce" as defined in Section 501.203(8), Florida Statutes, by soliciting Florida consumers to purchase vehicles during tent sales promoted and staffed by Traffic Jam, and participating in the sale of cars to Florida consumers.

## FACTS RELEVANT TO COMPLAINT

18.    Traffic Jam is a marketing company focused on the automotive industry.  It offers direct-mail advertising campaigns, staffed events such as tent sales ("Tent Sales") during which vehicles are sold to consumers, and other services. Traffic Jam offers the above-referenced services to Floridians.

19.    Defendants advertise Traffic Jam's services through its website, trafficjamevents.com.

20.    Defendants solicit Florida consumers to attend Tent Sales through mailers sent directly to Florida consumers.  Defendants control the messaging and content of the mailers, the number of consumers who receive the mailer, the geographic market where consumers will receive the mailers, the printing of the mailers, and the actual transmission of the mailers to consumers.

5

21.     Defendants control the location of Tent Sales and logistics related to Tent Sales.  Defendants provide all staffing for Tent Sales and, upon information and belief, have authority to control the pricing of vehicles offered at Tent Sales. Defendants share in the profits derived from the Tent Sales with car dealerships that supply the inventory of vehicles.

22.     The Attorney General received complaints from consumers alleging Defendants' misleading and deceptive advertising practices related to a direct mail piece offering COVID-19 stimulus[2] funds and a related Tent Sale.

23.     More specifically, consumers received an oversized envelope by mail containing a document purporting to provide information about the COVID-19 stimulus program with an identifying "Notice No." (the "Notice"), and a "check" purporting to come from the "Stimulus Relief Program" (the envelope, Notice and check are collectively referred to herein as the "COVID-19 Stimulus Mailer").

24.     On the outside of the envelope, appears the following language in bold-face type: "**IMPORTANT COVID-19 ECONOMIC STIMULUS DOCUMENT ENCLOSED**" and "**TIME-SENSITIVE FAST-TRACKED MAIL: OPEN IMMEDIATELY**."

---

[2] The Coronavirus Aid, Relief, and Economic Security Act (referred to as the CARES Act and also widely referred to as COVID-19 Stimulus) is the financial aid package enacted by the U.S. federal government in response to COVID-19 crisis, which provides a stimulus payments to battle the harmful effects of the COVID-19 pandemic.

6

25.     At the top of the Notice, the COVID-19 Stimulus Mailer also states in bold:  "**URGENT:  COVID-19  ECONOMIC  AUTOMOTIVE  STIMULUS PROGRAM RELIEF FUNDS AVAILABLE · ALL PAYMENTS DEFERRED FOR 120 DAYS**."  The Notice also includes what appears to be a bar code and what appears to be a government seal in the background.  See excerpt below:



26.     The Notice further references:

- **"A  special  COVID-19  Economic  Automotive  Stimulus Program relief funds and other incentives will be held at 5925 SW  20th  St.,  Bushnell,  FL  33513,  across  the  street  from Walmart, March 27th through April 5th, 2020.";**
- "Stimulus  Temporary  10-day  Relief  Site:  5925  SW  20th  St. Bushnell, FL 33513"; and
- "You  must  claim  these  stimulus  incentives  at  your  designated temporary 10-day site: 5925 SW 20th St., Bushnell, FL 33513."

27.     The  COVID-19  Stimulus  Mailer  also  states,  "This  COVID-19 Economic Automotive Stimulus Program will include hundreds of quality, clean cars, trucks, vans and SUVs from participating dealerships in the area."

7

28.     Further, the Notice lists the following "mandatory qualifications to receive Stimulus Relief Funds:" 1) must be permanent US resident; 2) must have a valid driver license; and 3) annual income cannot exceed $91,300.

29.     The COVID-19 Stimulus Mailer also includes what appears to be a check issued by "Stimulus Relief Program" in the amount of $3,344.68, and the memo field of the check states "COVID-19 AUTO STIMULUS."   See image below:



30.     Finally, the Notice also states that "Thousands in Relief Funds with this notice.  Receive additional discounts on your vehicle purchase – check the enclosed documentation for your funds."

31.     The COVID-19 Stimulus Mailer gives the false net impression that it was sent by an official government agency and includes a stimulus check issued by the government to be used for the purchase of a vehicle.

8

32.     Upon information and belief, Defendants sent the COVID-19 Stimulus Mailer to tens of thousands of Florida consumers.

33.     Defendants created the COVID-19 Stimulus Mailer, identified the Florida consumers to whom the COVID-19 Stimulus Mailer would be sent, and paid for the COVID-19 Stimulus Mailer all in order to drive traffic to a Tent Sale in Bushnell, Florida.

34.     Defendants communicated with a Florida resident company regarding the COVID-19 Stimulus Mailer and defended the content.

35.     Upon information and belief, Defendants are not affiliated with, supported by, endorsed by, or in partnership with any US government agency for the purposes of COVID-19 Stimulus relief efforts.

36.     Defendants intentionally made false and deceptive representations regarding the COVID-19 Stimulus in their COVID-19 Stimulus Mailer to mislead Florida consumers and attract them to attend an automotive Tent Sale taking place between March 27 through April 5, 2020, in Bushnell, Florida.

37.     As recently as March 2020, Defendants emphasized to at least one car dealership that the COVID-19 Stimulus Mailer was legal and effective. Specifically, when a car dealership raised concerns about the content of the COVID-19 Stimulus Mailer, Jeansonne suggested that he and Traffic Jam were simply engaged in

9

effective marketing.  In April 2020, Jeansonne stated that while people are somewhat "running from COVID-19", everyone is running to "Stimulus Relief Funds".

38.     Given their stated business of offering and using  promotions to attract consumers to Tent Sales, and Jeansonne's recent statement that the COVID-19 Stimulus Mailer is legal and effective, Defendants are likely to continue to use the COVID-19 Stimulus Mailer or a similar COVID-19 stimulus promotion to mislead and confuse consumers throughout Florida if an injunction is not entered.

39.     Additionally, in or about August 2019, Defendants provided false information to a Florida car dealership, claiming that Traffic Jam conducts "eight offsite events per month with a minimum 400k mail pieces a month," and that "all of our mail is reviewed by the attorney general".  The car dealership understood this to mean that the Florida Attorney General reviewed and approved all mail created and produced by Traffic Jam to solicit attendance at Tent Sales. This false information was then provided to the Better Business Bureau (the "BBB") by the car dealership in response to a consumer complaint that is unrelated to the COVID-19 Stimulus Mailer.  The Attorney General does not approve any such campaigns or communications.

10

## THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

40.     Section 501.204(1), Florida Statutes states that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

41.     Section 501.203(8), Florida Statutes, defines "[t]rade or commerce" as:

> the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

42.     The provisions of FDUTPA shall be "construed liberally" to promote and "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."   Fla. Stat. § 501.202.

43.     A person that willfully engages in a deceptive or unfair act or practice is liable for a civil penalty of Ten Thousand Dollars ($10,000.00) for each such violation, pursuant to Section 501.2075, Florida Statutes, and Fifteen Thousand Dollars ($15,000.00) for each violation victimizing a senior citizen, pursuant to Section 501.2077, Florida Statutes. Willful violations occur when the person knew

11

or should have known that the conduct in question was deceptive or unfair or prohibited by rule, pursuant to Section 501.2075, Florida Statutes.

**COUNT I**
**Against Traffic Jam Events, LLC**
**(Violation of Chapter 501, Part II, Florida Statutes)**

44.     Plaintiff adopts, incorporates herein, and re-alleges paragraphs 1 through 43 as if fully set forth hereinafter and further alleges:

45.     As set forth above, Defendants have engaged and continue to engage in deceptive, unconscionable and unfair practices by knowingly making false, deceptive, and misleading misrepresentations including (i) stating that they were mailing consumers important COVID-19 stimulus-related information; (ii) stating that consumers would have access to COVID-19 Stimulus funds for the purchase of a vehicle; (iii) stating that the Tent Sale conducted in Bushnell, Florida from March 27 through April 5, 2020 was a COVID-19 Stimulus "temporary 10-day relief site"; (iv) claiming that they or any car dealership with which they worked was working with and/or affiliated with the "COVID-19 Economic Automotive Stimulus Program"; (v) mailing consumers a document purporting to be a check issued by the "Stimulus Relief Program" and related to the "COVID-19 Auto Stimulus"; and (vi) using language and images to mislead consumers by suggesting a relationship between the government and Defendants and/or any car dealership with which they work.

12

46.     Defendants created and controlled the content of the COVID-19 Stimulus Mailer and discussed the contents with a Florida-based car dealership after the mailer had been sent to consumers.

47.     Additionally, Defendants falsely communicated that the Attorney General reviews its direct mail campaigns, which it does not.

48.     Through the actions and related business practices set forth in this Complaint, Defendants are engaging in representations, acts, practices or omissions that are material, and that are likely to mislead consumers acting reasonably under the circumstances.

49.     The actions and related business practices of Defendants as set forth in this Complaint shock the conscience.

50.     Through the actions and related business practices set forth in this Complaint, Defendants are committing acts or practices in trade or commerce that offend established public policy and are unethical, oppressive, unscrupulous or substantially injurious to consumers.

51.     Through the actions and related business practices set forth in this Complaint, Defendants are engaging in acts or practices that are likely to cause substantial injury to consumers. This substantial injury is not reasonably avoidable by the consumers themselves and is not outweighed by countervailing benefits to consumers or competition.

13

52.     Thus, Defendants are engaged in unfair or deceptive or unconscionable acts or practices in the conduct of any trade or commerce in violation of Section 501.204(1), Florida Statutes.

53.     Traffic Jam should be subject to civil penalties for willful violations of FDUTPA in the amount of Ten Thousand Dollars ($10,000) for each violation pursuant to Section 501.2075, Florida Statutes, and Fifteen Thousand Dollars ($15,000) for each violation that victimized or attempted to victimize, a senior citizen pursuant to Section 501.2077, Florida Statutes.

54.     Traffic Jam willfully engaged in and continues to engage in deceptive and unfair acts and practices in that Traffic Jam knew or should have known that the methods, acts or practices alleged herein were and are unfair, deceptive, unconscionable and prohibited by law.

55.     These above-described acts and practices of Traffic Jam have caused substantial injury to the public, and will likely continue to cause injury and prejudice the public.

56.     Unless Traffic Jam is temporarily and permanently enjoined from engaging further in the acts and practices complained of herein, Traffic Jam's actions will continue to result in irreparable injury to the public for which there is no adequate remedy at law.

14

## COUNT II
## Against David J. Jeansonne, II
## (Violation of Chapter 501, Part II, Florida Statutes)

57.     Plaintiff, adopts, incorporates and re-alleges paragraphs 1 through 52 as if fully set forth herein.

58.     Under FDUTPA, once corporate liability is established, an individual defendant may be individually liable if he participated directly in the deceptive or unfair practices or acts, or he possessed the authority to control them.

59.     Upon information and belief, during all times relevant to this action, Jeansonne has been the owner and president of Traffic Jam and has controlled the operations of Traffic Jam.

60.     Therefore, Jeansonne either directly has controlled, had the authority to control or was aware of the unfair and deceptive acts referenced above.  Because Jeansonne either directly controlled or has the authority to directly control and participate in the unfair and deceptive business practices of Traffic Jam, he can be held individually liable under FDUTPA.

61.     Jeansonne approved of the content in the COVID-19 Stimulus Mailer and personally defended the use of the same to a Florida-based car dealership with which the Defendants shared a business relationship.

15

62.     The actions and related business practices of Traffic Jam, and of Jeansonne as the president of Traffic Jam, as set forth in this Complaint shock the conscience.

63.     Through the actions and related business practices set forth in this Complaint, Jeansonne is committing acts or practices in trade or commerce that offend established public policy and are unethical, oppressive, unscrupulous or substantially injurious to consumers.

64.     Through the actions and related business practices set forth in this Complaint, Jeansonne is engaging in acts or practices that are likely to cause substantial injury to consumers. This substantial injury is not reasonably avoidable by the consumers themselves and is not outweighed by countervailing benefits to consumers or competition.

65.     Thus, Jeansonne is engaged in unfair or deceptive or unconscionable acts or practices in the conduct of any trade or commerce in violation of Section 501.204(1), Florida Statutes.

66.     Jeansonne should be subject to civil penalties for willful violations of FDUTPA in the amount of Ten Thousand Dollars ($10,000) for each violation pursuant to Section 501.2075, Florida Statutes, and Fifteen Thousand Dollars ($15,000) for each violation that victimized or attempted to victimize, a senior citizen pursuant to Section 501.2077, Florida Statutes.

16

67.     Jeansonne willfully engaged in and continues to engage in deceptive and unfair acts and practices in that he knew or should have known that the methods, acts or practices alleged herein were and are unfair, deceptive, unconscionable and prohibited by law.

68.     Unless Jeansonne is temporarily and permanently enjoined from engaging further in the acts and practices complained of herein, Jeansonne's actions will continue to result in irreparable injury to the public for which there is no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Office of the Attorney General, State of Florida, Department of Legal Affairs, prays that the Court provide the following relief:

A.     Permanently enjoin Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, who receive actual notice of the injunction, from engaging in the acts and practices in violation of provisions of FDUTPA as specifically alleged above and any similar acts and practices relating to the relaying of false or misleading statements to consumers related to the COVID-19 Stimulus;

B.     Award such legal, equitable, or other relief as is just and appropriate pursuant to Section 501.207(3), Florida Statutes, including but not limited to restitution to customers and disgorgement of all ill-gotten gains;

17

C.     Assess against Defendants civil penalties in the amount of Ten Thousand Dollars ($10,000) for each violation accordance with Section 501.2075, Florida Statutes, and Fifteen Thousand Dollars ($15,000) for each violation that victimized or attempted to victimize, a senior citizen in accordance with Section 501.277, Florida Statutes;

D.     Award the Attorney General reasonable attorneys' fees and costs pursuant to the provisions of Section 501.2105, Florida Statutes, and as otherwise allowable by applicable statutes or law; and

E.     Award such other and further relief as the Court deems just and proper, including all equitable relief allowed pursuant to Sections 501.207(3), Florida Statutes.

Dated this 27rd day of April 2020.

Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL

**/s/ Jennifer Hayes Pinder**
JENNIFER HAYES PINDER
Senior Assistant Attorney General
Florida Bar #017325
Email: jennifer.pinder@myfloridalegal.com

ELIZABETH LESTER MARTIN
Assistant Attorney General
Florida Bar # 116422
Email: elizabeth.martin@myfloridalegal.com

Department of Legal Affairs
Office of the Attorney General
3507 E. Frontage Road; Suite 325

18

Tampa, Florida 33607
Telephone (813) 287-7950
Facsimile (813) 281-5515