# ATTACHMENT E

EMILIE BURDETTE, #22094
Assistant Attorney General
Office of the Attorney General
Consumer Protection & Antitrust Division
120 SW 10th Ave., 4th Floor
Topeka, Kansas 66612-1597



FILED BY CLERK
KS. DISTRICT COURT
THIRD JUDICIAL DIST.
TOPEKA, KS

2010 SEP 15 P 2: 21

## IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS
## DIVISION 12

| | |
|---|---|
| STATE OF KANSAS, *ex rel.* STEVE SIX, ATTORNEY GENERAL, <br><br> *Plaintiff,* <br><br> v. <br><br> TRAFFIC JAM EVENTS, LLC, a Louisiana Limited Liability Company, <br><br> *Defendant.* | ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. **10-C-1278** |

## JOURNAL ENTRY OF CONSENT JUDGMENT

**NOW** on this **14th** day of September, 2010, the above-captioned matter comes

before this Court for approval of a stipulated Journal Entry of Consent Judgment pursuant

to K.S.A. 50-632(b).  Plaintiff, State of Kansas, *ex rel.* Steve Six, Attorney General,

appears by and through counsel, Emilie Burdette, Assistant Attorney General.

Defendant, Traffic Jam Events, LLC, appears by and through counsel, Terry A. Isles, of

the Law Office of Terry A. Isles.  There are no other appearances and none are required.

**THEREUPON** the Court, being fully advised in the premises and taking notice

of the parties' stipulations, approves this agreement and adopts as its own the following

findings and conclusions:

## I. PARTIES TO THIS AGREEMENT

1.     Plaintiff, State of Kansas, ex rel. Steve Six is the duly appointed and acting Attorney General of the State of Kansas.

2.     The Attorney General's authority to bring this action is derived from the statutory and common law of the State of Kansas, specifically the Kansas Consumer Protection Act, K.S.A. 50-632(b).

3.     Defendant, Traffic Jam Events ("TJE"), is a limited liability marketing company organized and domiciled under the laws of the State of Louisiana, with a principal place of business located at 110 Veteran's Blvd., Suite 180A, Metairie, Louisiana.

## II. JURISDICTION AND VENUE

4.     Defendant TJE admits that, at all times relevant to the allegations set forth herein and, in the ordinary course of business, it acted as a "supplier," either individually through employees, representatives, or agents, or acting as an agent for a Kansas supplier, as defined by K.S.A. 50-624(l), by soliciting or advertising the sale of automobiles to consumers in Johnson County, Kansas.

5.     TJE admits that, at all times relevant to the allegations set forth herein and, in the ordinary course of business, it engaged in consumer transactions or solicitations as defined by K.S.A. 50-624(c), either individually through employees, representatives, or agents, or acting as agent for a Kansas supplier.

6.     TJE further admits and this Court determines there is personal and subject matter of jurisdiction pursuant to K.S.A. 50-623 and K.S.A. 50-638(a).

7.     Venue is also proper in the Third Judicial District of Kansas (Shawnee County), pursuant to K.S.A. 50-638(b).

### III.  PURPOSE AND INTENT OF THIS CONSENT JUDGMENT

8.    In the interest of avoiding the costs and uncertainty associated with litigation, Defendant voluntarily enters into this stipulated judgment in order to settle all claims that could potentially be asserted by Plaintiff arising out of the specific allegations set forth herein.  Further, this Consent Judgment shall not be deemed to be an admission of any violation of the KCPA by Defendant, and Defendant denies any and all liability as to the claims asserted herein.  Consistent with the provisions of K.S.A. 50-632(b), the parties agree this Consent Judgment shall constitute a full and final satisfaction of the claims made by Plaintiff in this action.

### IV.  ALLEGED KCPA VIOLATIONS

9.    Plaintiff alleges that TJE committed the following acts or practices in violation of the KCPA.

10.   From approximately May through September of 2008, and all periods relevant hereto, TJE acted either individually through its employees, representatives, or agents, or acted as agent for a Kansas supplier, namely, Robert Brogden's Olathe Pontiac-Buick-GMC, Inc. d/b/a Robert Brogden Auto Plaza ("RBAP"), in designing and sending approximately 100,000 promotional fliers, which solicited Kansas consumers to attend various auto sales events hosted by RBAP.  Each of the fliers implied to recipients they had the "winning number" for the grand prize giveaway when, in fact, they did not.[1]

11.   Specifically, in large, bold-face print, the flier stated: "**FINALIST**," "**GRAND PRIZE GIVEAWAY**," "**YOU HAVE BEEN CHOSEN AS A FINALIST**," **CHECK YOUR NUMBER**

TO SEE IF IT MATCHES THE WINNING NUMBER!!." This language occurred in close proximity to a large scratch-off box stating: "SCRATCH HERE TO REVEAL NUMBER. . .MATCH THE WINNING NUMBER TO SEE IF YOU'VE WON." The winning number then readily appeared on the opposite side of each flier where a box in bold-face print stated, "WINNING NUMBER," and showed an identical number to the one revealed under the scratch-off box. Consequently, every consumer receiving the flier had what impliedly was the "winning number."

12. However, various mouse print disclaimers on the inside of TJE's flier contradicted such representations, and showed that the winning number was actually printed in a small print directly under consumers' address on the front of the fliers. Such practices by TJE are alleged to be deceptive pursuant to K.S.A. 50-626(b)(1), (2), and (3), and K.S.A. 50-692(c)(6)(A) and (C).

13. It is further alleged the inside of the promotional flier designed by TJE and sent to consumers contained additional KCPA violations based upon the following representations: "GRAND PRIZE GIVEAWAY for a "New 2008 [GMC]," depicting various 2008 GMC automobiles along with other promotional offers, i.e., (1) "THAT'S RIGHT 75% OFF! ORIGINAL MSRP;" (2) "SAVE THOUSANDS WITH 2.9% APR;" (3) "SAVE $7000 OFF KELLEY BLUE BOOK;" AND (4) "0% DOWN PAYMENT...$134 PER MONTH...AND NO PAYMENT FOR 3 FULL MONTHS!!."

14. Consumers were led to believe such promotional offers referred to the primary advertisement containing text and pictures relating to the 2008 GMC vehicles. However, located in mouse print (i.e., size 8 pt. font or below) at the bottom of

---

[1] An example of a promotional flier is attached as Exhibit A.

the promotional flier, a paragraph containing multiple disclaimers materially altered the implied and/or express meaning of the primary offer.[2]

15. Specifically, the offer stated "**0% DOWN PAYMENT. . .$134 PER MONTH**," which was materially altered by such mouse print disclaimer stating that such offers applied only to a single 1999 Ford Taurus, sticker number of "T4583A. . .[at] a total sale price of $4,900, for 48 months at 10% with approved credit." Such an offer lacks clear and conspicuous disclosure. Consequently TJE's advertisement is alleged to be deceptive pursuant to K.S.A. 50-626(b)(1), (2), (3), and (7).

16. TJE's next questionable offer stated: "**THAT'S RIGHT 75% OFF! ORIGINAL MSRP**;" however, this offer was also altered by another mouse print disclaimer at the bottom of the page stating it applied only to "1997 Pontiac Grand Prix, sticker number C863A, original MSRP $26,800 selling price of $6,600. . . ," rather than the 2008 GMC vehicles actually referenced and pictured directly above in large bold-face print. Again, use of mouse print disclaimers that materially alter the implied and/or express representations of the primary offer results in a lack of clear and conspicuous disclosure; therefore, such an offer is alleged to be deceptive pursuant to K.S.A. 50-626(b)(1), (2), (3) and (7).

---

[2] The following is a scanned version of TJE's disclaimer paragraph from the September 2008 flier shown in actual size:

(1) Zero down plus tax, title, license and dealer processing fees/ $134 per month; example: 1999 Ford Taurus, stk#T4583A, Total sale price $4,900, 48 months at 10% with approved credit. Based score 750 or above. Down payment may vary; vehicle payment totaled with your current monthly payments must not exceed 50% of your gross monthly income. Must be at least 18 years of age. Any equity deficit in your current vehicle must be paid or refinanced with new vehicle. Bankruptcies must be discharged. Vehicles may have been obtained at auction. (2)-75 % off original MSRP example: 1997 Pontiac Grand Prix Stk#C863A, original MSRP $26,800 selling price $6,600 plus tax, title, license, and dealer processing fees. (2) No payments Until December 2008 subject to lenders approval with approved credit. (4) 2.9% Interest Rate Available for this event-Available on all New 2008 GMC Sierra's and Yukon's. Financing available for 60 months through GMAC-with approved credit-subject to lenders approval-see dealer for details. (5) $7,000 off N.A.D.A. Book Retail available on select vehicles only, example: 2005 Chevrolet Corvette Stk#T4500A-N.A.D.A. retail price $38,295 selling price $31,275 plus tax, title, license, and dealer processing fees. * If the winning number by your address is posted at the dealership you may choose which prize to redeem Winner had choice of the following prizes Odds of winning a TV New 2008 Pontiac G8 stk# #94667, Retail Value $17,200 ;40,100 or #2 "65 LCD-Plasma-enn TV Models' LG (52 599) Priced at $994 1: 40,100 or #3 2008 TRX700XX ATV Base MSRP $7,899 1:-40,100; #4 $1000 Shopping Spree thru Online Shopping Spree Certificate permits-you to obtain merchandise with it than-higher suggested retail price equivalent to the value of the certificate stated above from www.selectyourgifts.com. In connection with your use of the certificate, you will be required to pay shipping handling, and processing fees per item ranging from $1.95 up to $29.95 based upon the per item value of the merchandise that you select. You may view the merchandise available for selection an predetermine the costs for shipping, handling, and processing by visiting www.selectyourgifts.com. Other terms and conditions regarding the use of the certificate are set forth on the website '98,097: 40,100 #5 $100 Cash 1: 40,100. A warning number will definitely be mailed in combination with other promotional invitations. While supplies last, no purchase necessary, one prize per home Must be present to win. Winners must be 18 years or older; have a valid driver's license and social security card and are responsible for all taxes. Contest begins September 16th, 2008 and end September 20th, 2008. Purchase does not increase chance of winning. Void where prohibited. See complete rules available at Robert Brogden Pontiac Buick GMC, Robert Brogden Pontiac Buic GMC employees and associates, their homes, AHNO associated sponsors or agencies, and their family members and members of same household are ineligible. Addresses must redeem original nu piece in person by close of business on September 20th, 2008. In the event all prevs/mechanical errors or duplicate winning numbers distributed in error, then the number match contest is void and no prizes will be awarded. All validity claimed prizes will be awarded. Any circula, med prizes will not be awarded. Sponsor not responsible for lost, misdirected or damaged-mail. All vehicles are fi illustration purposes only; all vehicle examples are subject to once sale. Pictures may not resemble exact prize models Void where prohibited by law. All offers end September 20th, 2008

5

17.     Next, TJE's flier stated: "SAVE THOUSANDS WITH 2.9% APR;" however, the bottom of the page contained a mouse print disclaimer stating the offer applied only to "new 2008 GMC Sierras and Yukons," with approved credit under certain financing terms.  The offer did not apply to any of the other vehicles referenced or pictured in the advertisement.  Use of mouse print disclaimers that materially alter the implied and/or express representations of the primary offer results in a lack of clear and conspicuous disclosure; therefore, such an offer is alleged to be deceptive pursuant to K.S.A. 50-626(b)(1), (2), (3), and (7).

18.     TJE's flier also stated: "SAVE $7000 OFF KELLEY BLUE BOOK;" however, this representation contained another disclaimer stating that its application was limited to a single, "2005 Chevrolet Corvette, sticker number T4500A, N.A.D.A. retail price $38,275, selling price $31,275. . . ."   The offer did not apply to any of the 2008 GMC vehicles referenced and pictured directly above the offer, nor did it apply to any other used vehicles.  Use of mouse print disclaimers that materially alter the implied and/or express representations of the primary offer results in a lack of clear and conspicuous disclosure; therefore, such an offer is alleged to be deceptive pursuant to K.S.A. 50-626(b)(1), (2), (3), and (7).

19.     TJE's flier contained another misleading representation stating that a "JACKPOT ROLLS OVER EACH DAY UNTIL CLAIMED!!."  This representation by TJE implied there was a jackpot with an accumulation each day that, if not claimed, would be paid to another participant who comes forward to claim the prize if a winner failed to come forward.  This representation promoted event attendance by implying to consumers there were additional chances to win.  According to the

6

flier's mouse print, however, there was only one potential winner who was already identified by number on each flier, and that person could choose only one of the prizes offered, i.e., (1) a "New 2008 Pontiac G5;" (2) a "65-inch Plasma TV;" (3) a "Honda TRX 700 XX" four-wheeler; (4) a "$1,000 Shopping Spree;" or, (5) "$100 Cash." In sum, there was no jackpot, nothing to accumulate or "roll-over," even if a winning number failed to come forward. Such an ad is alleged to be deceptive pursuant to K.S.A. 50-626(b)(1), (2), (3), and (7).

20.     TJE's flier also advertised several "gifts" or prize giveaways (i.e., "MP3 Player"), which amounted to multiple *per se* violations of the KCPA under K.S.A. 50-692. These offers failed to provide consumers with proper notice of a "*verifiable retail value*" for each of the prizes listed, failed to delineate the *costs of shipping/handling* and other limitations for claiming the prizes, and none of the offers were printed in size or type of font required by the statute, nor were they printed in "*immediate proximity*" to the prize listed.

## V.  AGREED REMEDIES

21.     Defendant agrees to entry of judgment against it in the amount of $25,000.00, and agrees to pay said amount at the time the filing of this Consent Judgment or as follows:

22.     Pursuant to K.S.A. 50-636(a), Defendant shall pay the stipulated judgment amount of Twenty-Five Thousand Dollars ($25,000.00) in settlement of this matter, in the form of a cashier's check, directly payable to the Office of the Kansas Attorney General. Said funds shall be distributed in accordance with the provisions of K.S.A. 50-632.

23. After payment of this judgment in full, the Attorney General shall file with the court a satisfaction of judgment and provide the Defendant with a file-stamped copy.

24. Defendant agrees to be permanently enjoined from committing the acts or practices set forth herein in any ongoing or future consumer transactions in this State. Defendant further agrees its agents, employees, and representatives are also permanently enjoined from committing the acts or practices described above in any ongoing or future consumer transactions within this State.

25. Compliance with this Consent Judgment does not relieve Defendant of any obligation imposed by applicable federal, state, or local law, nor shall the Attorney General be precluded from taking appropriate legal action to enforce civil or criminal statutes under his jurisdiction.

26. The parties understand this Consent Judgment shall not be construed as an approval or sanction by the Kansas Attorney General of the business practices of Defendant, nor shall Defendant represent the decree as such approval. The parties further understand that any failure by the State of Kansas or by the Attorney General to take any action in response to any information submitted pursuant to the Consent Judgment shall not be construed as an approval of or sanction of any representations, acts or practices indicated by such.

27. Nothing in this Consent Judgment shall be construed to limit the rights of any consumers from pursuing any and all legal remedies they may be entitled to assert individually against Defendant through a private cause of action.

28.    Defendant acknowledges and agrees this Court has continuing jurisdiction over this matter pursuant to K.S.A. 50-632(b) and, any breach any of the terms, conditions, or payments set forth herein, shall be treated as a violation of the Court's order and shall be subject to further penalties under the law.

29.    This Court shall also retain such jurisdiction for the purpose of enabling any of the parties to this Consent Judgment to apply to this Court at any time for such further orders and relief as may be necessary or appropriate for the modification or compliance of any provisions contained herein. This Court shall also retain jurisdiction if any violation of any term of this Consent Judgment is committed.

30.    Defendant further acknowledges and agrees that, pursuant to the United States Bankruptcy code, specifically 11 U.S.C 523(a)(2)(A) and (a)(7), and due to the nature of the conduct underlying this agreement and the violations set forth herein, this judgment shall not be dischargeable in any federal court bankruptcy proceeding commenced after the entry of this judgment.

31.    If any portion, provision or part of this Consent Judgment is held to be invalid, unenforceable, or void for any reason whatsoever, that portion shall be severed from the remainder and shall not affect the validity or enforceability of the remaining provisions, portions, or parts.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the stipulations and agreements of the parties contained herein are found to be reasonable and just, and are hereby adopted and approved as the findings and conclusions of the Court.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that judgment is hereby entered in favor of Plaintiff against Defendant Traffic Jam Events, LLC, in the amount set forth herein.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that this Court shall retain jurisdiction over the parties and subject matter of this action for the purpose of rendering any additional equitable relief, orders, decrees, or judgments as may be requested by the parties or may be deemed appropriate by the Court.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that pursuant to the Kansas Consumer Protection Act and the provisions of K.S.A. 50-632(b), the Court hereby approves the terms of the Consent Judgment and adopts the same as the Order of the Court.

**IT IS SO ORDERED**

_____
Judge of the District Court

Respectfully submitted and approved by:
STEVE SIX, Attorney General,

By: _____
EMILIE BURDETTE, #22094
Assistant Attorney General
Office of the Attorney General
Consumer Protection & Antitrust Division
120 SW 10th Ave., 4th Floor
Topeka, Kansas 66612-1597
Tel: 785-368-8453
Email: emilie.burdette@ksag.org
*Attorney for Plaintiff, State of Kansas*

By: _____

Terry A. Iles, KS# 17133
Law Office of Terry A. Iles
The Liberty Building
214 SW 6th Avenue, Suite 305
Topeka, KS 66603
Tel. 785-232-7777
Email: terryiles@ileslawoffice.com
*Attorney for Defendant, Traffic Jam Events*

**AND**

By: _____

Authorized Agent or Officer of Defendant
Traffic Jam Events, LLC

By:_____
_____, KS#_____
_____(Law Firm)
_____(Address)
Tel. _____-_____-_____
Email: _____
*Attorney for Defendant, Traffic Jam Events*


**AND**

By:_____
   Authorized Agent or Officer of Defendant
Traffic Jam Events, LLC

# ATTACHMENT F

IN THE TENTH JUDICIAL DISTRICT
DISTRICT COURT, JOHNSON COUNTY, KANSAS
CIVIL DEPARTMENT

STATE OF KANSAS, *EX REL.*          )
STEPHEN M. HOWE, DISTRICT ATTORNEY  )
TENTH JUDICIAL DISTRICT,            )
                                    )
                         Plaintiff, )
        v.                          )          Case No. 12CV8191
                                    )          Division No. 8
                                    )
TRAFFIC JAM EVENTS, LLC,            )
                                    )
                        Defendant.  )
_____ )

Pursuant to Chapter 60 of the Kansas Statutes Annotated

## JOURNAL ENTRY OF CONSENT JUDGMENT

**NOW** on this ____ day of June, 2013, Plaintiff's Journal Entry of Consent Judgment comes before the Court pursuant to K.S.A. 50-632(b). The Plaintiff appears by and through Stephen M. Howe, District Attorney, and Emilie Burdette, Assistant District Attorney. Defendant appears by counsel Frank W. Lipsman of Hubbard, Ruzicka, Kreamer and Kincaid, LC.

**WHEREUPON** the parties advise the Court that they have stipulated and agreed to the following:

1.  Stephen M. Howe is the duly elected, qualified and acting District Attorney for the Tenth Judicial District of the State of Kansas.

2.  The District Attorney's authority to bring this action is derived from the statutory and common law of the State of Kansas, specifically the Kansas Consumer Protection Act, K.S.A. 50-623 *et seq.*

3.  Defendant Traffic Jam Events, LLC (hereinafter "Defendant" or "Defendant TJE"), is an entity organized under the laws of the State of Louisiana.

4.  Defendant has a principal place of business located at 704 Hickory Avenue in Harahan, Louisiana.

5.  Defendant is subject to the Court's jurisdiction under the Kansas Consumer Protection Act pursuant to K.S.A. 50-638(a).

6.  Venue is proper in the Tenth Judicial District of Kansas, Johnson County, pursuant to K.S.A. 50-638(b).

7.  At all times relevant and in the ordinary course of business, Defendant engaged in consumer transactions with consumers as defined in K.S.A. 50-624(c) and 50-624(b), either individually or through employees, representatives, or agents.

8.  At all times relevant and in the ordinary course of business, Defendant acted as a supplier within the definition of K.S.A. 50-624(l).

9.  At all times relevant and in the ordinary course of business, Defendant acted as a solicitor within the definition of K.S.A. 50-692(a)(3).

10.  Defendant operates as a marketing firm that provides services for client car dealerships.

11.  Defendant enters into contractual agreements with car dealerships to provide services during a specific period of time, denoted in contracts as a "Staffed Event Sale," (hereinafter "Event").

12.  These services may include:

    a.  Creating or causing to be created direct mail advertising solicitations relating to the Event;

    b.  Sending or causing to be sent direct mail advertising solicitations promoting the Event at the client dealership;

    c.  Providing dealer kits to the client dealership with all point of sale materials for the Event;

*Clerk of the District Court, Johnson County Kansas*
*07/10/13  04:34pm SH*

d.   Providing the client dealership with radio and/or television spots in the media market local to the client dealership;

e    Furnishing staff for the Event; and

f.   Providing insurance for the "grand prize" referenced in the solicitations.

13.  During May and June, 2012, Defendant entered into at least three client agreements with Pride Suzuki of Olathe (hereinafter "PSO") for Events to be held at that dealership. PSO is located in Olathe, Johnson County, Kansas.

14.  Defendant designed and/or produced not less than 6 different mailings to promote the three Events, and Defendant mailed or caused to be mailed not less than 64,000 pieces of promotional material to Johnson County residents in connection with the three Events.

15.  Defendant received at least $90,740.98 from PSO for services rendered in connection with the three Events.

16.  The Plaintiff alleges that Defendant committed certain acts and practices in violation of the Kansas Consumer Protection Act, K.S.A. 50-623, *et seq.* in connection with the three PSO Events. The Plaintiff alleges those violations include but are not limited to the following:

a.   Defendant engaged in unconscionable acts by sending or causing to be sent no less than 60,000 prize notifications that did not comply with the prize notification act, in violation of K.S.A. 50-692 and 50-627.

b.   During at least three sales events Defendant employed sales personal who were not licensed by the Kansas Department of Revenue as required by K.S.A. 8-2404. Defendant represented it had a sponsorship or approval that it did not enjoy, deceptive acts in violation of K.S.A. 50-626(b)(1)(B).

17.  Defendant voluntarily agrees to this Consent Judgment without trial or adjudication of any issue of fact or law and without admitting any allegation contained herein.

3

18. From the time of execution of this Consent Judgment, Defendant agrees to be permanently enjoined from entering into any consumer transactions originating within Kansas.

19. Defendant agrees to entry of judgment in the amount of $20,000.00.

20. Payment shall be delivered to Plaintiff in the form of a cashier's check or money order made payable to the JOHNSON COUNTY DISTRICT ATTORNEY INVESTIGATIVE FUND. Such funds shall be delivered at the time of execution of this Judgment.

21. Compliance with this Consent Judgment does not relieve the Defendant of any obligation imposed by applicable federal, state, or local law, nor shall the District Attorney be precluded from taking appropriate legal action to enforce civil or criminal statutes under his jurisdiction.

22. The parties understand this Consent Judgment shall not be construed as an approval or sanction by the District Attorney of the business practices of the Defendant, nor shall the Defendant represent the decree of such approval. The parties further understand that any failure by the District Attorney to take any action in response to any information submitted pursuant to the Consent Judgment shall not be construed as an approval of or sanction of any representations, acts or practices indicated by such.

23. Nothing in this Consent Judgment shall be construed to limit the rights of any consumers from pursuing any and all legal remedies they may be entitled to assert individually through a private cause of action.

24. Defendant acknowledges and agrees that this Court has continuing jurisdiction over this matter pursuant to K.S.A. 50-632(b) and, any breach of any of the terms or

conditions set forth herein, shall be treated as a violation of the Court's order and shall be subject to further penalties under the law.

25. This Court shall also retain such jurisdiction for the purpose of enabling any of the parties to this Consent Judgment to apply to this Court at any time for such further orders and relief as may be necessary or appropriate for the modification or compliance of any provisions contained herein. This Court shall also retain jurisdiction if any violation of any term of this Consent Judgment is committed.

26. If any portion, provision or part of this Consent Judgment is held to be invalid, unenforceable, or void for any reason whatsoever, that portion shall be severed from the remainder and shall not affect the validity or enforceability of the remaining provisions, portions or parts.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the stipulations and agreements of the parties contained herein are found to be reasonable and are hereby adopted and approved as the findings of fact and conclusions of law of the Court.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that judgment is hereby entered against the Defendant in favor of Plaintiff in the amounts set forth herein.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that this Court shall retain jurisdiction over the parties and subject matter of this action for the purpose of rendering any additional equitable relief, orders, decrees, or judgments as may be requested by the parties or may be deemed appropriate by the Court.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that pursuant to the Kansas Consumer Protection Act and the provisions of K.S.A. 50-632(b), the Court hereby approves the terms of the Consent Judgment and adopts the same as the Order of the Court.

*Clerk of the District Court, Johnson County Kansas*
*07/10/13  04:34pm SH*

**IT IS SO ORDERED**

/s/ CHARLES DROEGE
Dated: 07/10/13

Honorable Charles Droege
Judge of the District Court, Division 8

Respectfully submitted and approved by:

By: _____
Emilie Burdette, #22094
Assistant District Attorney
Johnson County Courthouse
P.O. Box 728
Olathe, KS  66051
(913) 715-3046
emilie.burdette@jocogov.org

*Attorney for Plaintiff*

By: _____
Frank W. Lipsman, #   1359
Hubbard, Ruzicka, Kreamer and Kincaid
130 North Cherry, P.O. Box 550
Olathe, KS  66051
(913) 782-2350

*Attorney for Defendant*

6

# ATTACHMENT G

49D10-1806-PL-021546

Marion Superior Court, Civil Division 10

Filed: 6/1/2018 4:03 PM
Myla A. Eldridge
Clerk
Marion County, Indiana

STATE OF INDIANA
IN THE MARION COUNTY CIRCUIT/SUPERIOR COURT

CAUSE NO. _____

| | |
|---|---|
| STATE OF INDIANA, <br><br> Plaintiff, <br><br> v. <br><br> TRAFFIC JAM EVENTS, LLC, <br><br> Defendant. | **COMPLAINT FOR INJUNCTION, RESTITUTION, CIVIL PENALTIES, AND COSTS** |

## I. INTRODUCTION

1.  The State of Indiana, by Attorney General Curtis T. Hill, Jr. and Deputy Attorney General Mark M. Snodgrass, commences this civil action under the Indiana Deceptive Consumer Sales Act, Indiana Code § 24-5-0.5-1 *et seq*., and the Indiana Promotional Gifts and Contests Act, Ind. Code § 24-8-1 *et seq*. for injunctive relief, consumer restitution, civil penalties, costs, and other relief.

2.  The Defendant, Traffic Jam Events, LLC, contracted with numerous Indiana motor vehicle dealers to run sales promotions. As part of each promotion, Traffic Jam Events, LLC would send mailings to thousands of Indiana consumers representing the recipients had won a specific prize, such as $5,000.00, an iPad or $500 gift card. The mailings did not contain proper disclosures as required by Indiana law. The recipients of the mailings were then directed to the sponsoring dealership to claim their prize. Once at the dealership, the Defendant subjected recipients to a sales pitch soliciting the

purchase of a motor vehicle. The recipients of the mailings were eventually awarded their "prizes," typically $5.00 gift cards. The Defendant's misrepresentations and actions are unfair, abusive, and deceptive, and constitute violations of Indiana's Deceptive Consumer Sales Act and Promotional Gifts and Contests Act.

## II. PARTIES

3. The Plaintiff, the State of Indiana, is authorized to bring this action and to seek injunctive and other statutory relief under Ind. Code § 24-5-0.5-4(c).

4. The Defendant, Traffic Jam Events, LLC ("Traffic Jam Events"), is a foreign limited liability company engaged in the business of automotive promotions and marketing, with a principal place of business in Louisiana, located at 704 Hickory Avenue, Harahan, Louisiana 70123.

5. At all times relevant to this Complaint, representatives of Traffic Jam Events sent promotional mailings to Indiana consumers, including consumers located in Marion County, and physically participated in and managed sales events at motor vehicle dealerships located in Indiana, including in Marion County.

## III. FACTS

1. Background Facts

6. Traffic Jam Events runs promotion and marketing campaigns on behalf of motor vehicle dealerships.

2

7.  At issue for purposes of this Complaint are Traffic Jam Event's promotional prize mailings sent to Indiana recipients and sales events managed by Traffic Jam Events, which occurred at Indiana motor vehicle dealerships.

8.  For each staffed sales event promotion, Traffic Jam Events, in collaboration with the sponsoring dealership, designs and sends a prize mailing to several thousand consumers.

9.  The purpose of the prize mailings is to lure consumers to the sponsoring dealership under the guise that the recipient won a significant prize. Traffic Jam Events states in advertising on its website directed at potential sponsor dealers that Traffic Jam Events prize mailings will result in "drastically increased traffic during your sales event. Many of these leads would normally be lost as literally hundreds of people visit your showroom with their prize mail piece in hand."

10. Traffic Jam Events employs sales persons to sell their sales events and corresponding prize mailing campaigns to Indiana motor vehicle dealerships.

11. Traffic Jam Events' Sales Training Manual instructs its salespeople to recite the following to prospective sponsor dealerships: "Does the cheaper company run their ads through the AG [Attorney General]? Because we do!"

12. Traffic Jam Events does not run its advertisements or prize mailings through the Indiana Attorney General, nor does Traffic Jam Events obtain any sort of review or approval from the Indiana Attorney General.

13.     The prize mailings utilized by Traffic Jam Events typically feature a game piece, usually involving a scratch-off area or pull tab, under which is some form of matching game.

14.     The prize mailings represent that the result on the game piece, i.e. matching symbols, codes, etc., is the determinant factor in whether a recipient is the winner of one of the prizes listed on the prize mailings.

15.     The game pieces on the prize mailings have no bearing on whether a recipient wins a prize.

16.     Each prize mailing for a respective sponsor dealer contains an identical game piece, including identical matching winning numbers, symbols, codes, etc., and declares each recipient a "winner."

17.     The prize mailings identify several prizes which the recipient may have "won," or alternatively, identifies a specific prize the recipient "won."

18.     The recipient, whom the prize mailing identifies as a "winner," is then instructed to call a telephone number listed on the prize mailing or to visit a specific website to schedule a time to claim their "prize."

19.     The telephone numbers on the prize mailings are operated by Traffic Jam Events and calls from prize mailing recipients are answered by a live operator.

20.     The live operator congratulates the calling prize mailing recipient for "winning" a prize, requests the recipient's phone number and email address,

and schedules an appointment for the recipient to claim their prize during the sales event at the sponsoring dealership.

21.     Alternatively, the recipient may visit a website referenced on the prize mailing to set up a time to claim their "prize." The website offers personal congratulations and declares the recipient has won a prize. The recipient is then required to input their name, address, phone number, email address, and the specific date and time during the sales event that they will claim their prize.

22.     The sales events advertised on prize mailings occur over several days and are staffed by salesman employed or affiliated with Traffic Jam Events.

23.     Once a recipient presents their "winning" prize mailing at a sales event, they are greeted by a Traffic Jam staffer and taken to the showroom of the sales event.

24.     The Traffic Jam Events staffer then directs the recipient to complete a "Special Event Registration Survey." This registration requests detailed information about the recipient's current vehicle, including the payoff amount, monthly payment, identity of persons on the vehicle's title, and whether the recipients have the vehicle's title with them. The registration also requests the recipient's income level, social security number, and the identity of the recipient's employer.

25.   A Traffic Jam Events staffer at the sales even then obtains a credit report based on the recipient's responses to the registration to determine what financing the recipient qualifies for.

26.   The sales event staffers then utilize aggressive sales tactics to attempt to convince a recipient to purchase a vehicle at the sales event.

27.   The sales event staffer eventually determines what "prize" the recipient won based on the prize mailing in their possession. The determining factor for winning a prize is not the game piece result as represented on the prize mailing, but instead a unique number located outside the game piece elsewhere on the prize mailing in small font.

28.   The Defendant utilizes prize mailings that include "winning" game pieces that have no bearing on whether a recipient won a prize in order to mislead and deceive the recipients.

29.   Every "prize" recipient in Indiana has received a nominal item of little value, such as a $5.00 Wal-Mart or McDonald's gift card.

30.   No Indiana recipient of a prize mailing from Traffic Jam Events has been awarded any prize other than the nominal, low value item given to every recipient who appears at the sales event.

31.   Traffic Jam Events has sent at least 443,020 prize mailings to Indiana recipients.

32.   The following are the specific sales events and corresponding prize mailings sent by Traffic Jam Events to Indiana recipients:

2. <u>Specific Indiana Sales Events</u>

A. **<u>Andy Mohr Mitsubishi Sales Event</u>**

33.  In May 2016, Traffic Jam Events mailed, or arranged to be mailed, a prize mailing entitled "Authorized Enhanced Trade-In Event" to five thousand (5,000) Indiana recipients. A true and accurate copy of the front and back of an exemplar copy of the "Authorized Enhanced Trade-In Event" prize mailing is attached and marked as Exhibit A.

34.  The sales event advertised on Exhibit A occurred from May 23, 2016 through May 31, 2016, at Andy Mohr Mitsubishi, located at 13927 Trade Center Drive, Fishers, IN 46038.

35.  Exhibit A contained a game piece that purported to determine whether a recipient was a winner of $5,000.00, stating "Scratch, Match & Win."

36.  Recipients of Exhibit A were instructed to scratch off the covering of the game piece to reveal whether there were four "matching amounts" to determine if the recipient was a winner.

37.  All 5,000 versions of Exhibit A sent to Indiana recipients contained an identical game piece containing four identical "$5,000" "matching amounts" and declared each recipient to be a "winner."

38.  The game piece on Exhibit A had no bearing on whether a recipient won a prize.

39.  No prizes were awarded at the sales event.

B. **<u>Auto Line Indy Sales Event</u>**

40.   In May 2016, Traffic Jam Events mailed, or arranged to be mailed, a prize mailing entitled "$25,000 Pre-Loaded Money Card Giveaway" to sixty-seven thousand (67,000) Indiana recipients. A true and accurate copy of the front and back of an exemplar copy of the "$25,000 Pre-Loaded Money Card Giveaway" prize mailing is attached and marked as Exhibit B.

41.   The sales event advertised on Exhibit B occurred from May 18, 2016 through May 28, 2016, at Auto Line Indy, located at 7900 Pendleton Pike, Fishers, IN 46228.

42.   Exhibit B contains a game piece that purported to determine whether a recipient was a winner of one of the following prizes: "$25,000 Pre-Loaded Money Card," "All-New iPad Pro," "$300.00 Shopping Card," or "$250.00 Cash in Hand."

43.   Recipients of Exhibit B were instructed to scratch off the covering of their "code" along with the codes for the "prize combinations" on the game piece. Exhibit B stated if the recipient's code matched one of the "prize combination" codes, then the recipient would be a "winner."

44.   All sixty-seven thousand (67,000) versions of Exhibit B sent to Indiana recipients contained an identical game piece, including an identical matching "code" and "prize combination" declaring each recipient to be a "winner."

45.   The game piece on Exhibit B had no bearing on whether a recipient won a prize.

46.    All recipients of Exhibit B who attended the sales event were awarded a "$300.00 Shopping Card" as their "prize."

### C. Big City Cars Sales Event I

47.    In March 2016, Traffic Jam Events mailed, or arranged to be mailed, a prize mailing entitled "$25,000 Giveaway Event" to sixty thousand (60,000) Indiana recipients. A true and accurate copy of the front and back of an exemplar copy of the "$25,000 Giveaway Event" prize mailing is attached and marked as Exhibit C.

48.    The sales event advertised on Exhibit C occurred from March 16, 2016 through March 26, 2016, at Big City Cars, located at 4910 Lima Road, Ft. Wayne, IN 46808.

49.    Exhibit C contains a game piece that purported to determine whether a recipient was a winner of one of the following prizes: "$25,000 Cash," "All-New iPad Pro," "$300.00 Shopping Card," or "$250.00 Cash in Hand."

50.    Recipients were instructed to match their "combination box" numbers to determine if their numbers matched the "official winning code."

51.    All 60,000 versions of Exhibit C had a "combination box" code that matched the "official winning code," and declared each recipient a winner.

52.    The game piece on Exhibit C had no bearing on whether a recipient won a prize.

53.    All recipients of Exhibit C who attended the sales event were awarded a "$300.00 Shopping Card" as their "prize."

**D.** **Big City Cars Sales Event II**

54.   In April 2016, Traffic Jam Events mailed, or arranged to be mailed, a prize mailing entitled "$25,000 Wal-Mart Shopping Spree Card Giveaway" to sixty-seven thousand (67,000) Indiana recipients. A true and accurate copy of the front and back of an exemplar copy of the "$25,000 Wal-Mart Shopping Spree Card Giveaway" prize mailing is attached and marked as Exhibit D.

55.   The sales event advertised on Exhibit D occurred from April 19, 2016, through April 30, 2016, at Big City Cars, located at 4910 Lima Road, Ft. Wayne, IN 46808.

56.   Exhibit D contains a game piece that purported to determine whether a recipient was a winner of one of the following prizes: "$25,000 Wal-Mart Shopping Spree Card," "All-New iPad Pro," "up to $500.00 Wal-Mart Gift Card," or "$250.00 Cash in Hand."

57.   Recipients were instructed to scratch-off the game piece included on Exhibit D to determine if their code of numbers matched a "prize combination code" to win.

58.   All 67,000 versions of Exhibit D contained a matching code and declared each recipient a winner.

59.   The game piece on Exhibit D had no bearing on whether a recipient won a prize.

60.   All recipients of Exhibit D who attended the sales event were awarded a $5.00 Wal-Mart gift card as their "prize."

61.   A $5.00 Wal-Mart gift card was not one of the prizes explicitly referenced on the front of Exhibit D.

62.   No recipient was eligible to win a $500.00 Wal-Mart gift card, despite the representation on Exhibit D that a $500.00 Wal-Mart gift card was a potential prize.

**E. Blossom Chevrolet Sales Event**

63.   In May 2016, Traffic Jam Events mailed, or arranged to be mailed, a prize mailing entitled "$10,000 Giveaway Event" to ten thousand (10,000) Indiana recipients. A true and accurate copy of the front and back of an exemplar copy of the "$10,000 Giveaway Event" prize mailing is attached and marked as Exhibit E.

64.   The sales event advertised on Exhibit E occurred from May 10, 2016 through May 16, 2016, at Blossom Chevrolet, located at 1850 N. Shadeland Ave, Indianapolis, IN 46219.

65.   Exhibit E contains a game piece that purported to determine whether a recipient was a winner of one of the following prizes: "$10,000 Cash," "Two (2) New iPad Mini 4s," "McDonalds for Up to One Year," or "$250.00 Cash in Hand."

66.   Recipients were instructed to match the number in their "combination box" game piece included on Exhibit E to determine if their numbers matched the "official winning code."

67.   All 10,000 versions of Exhibit E had a "combination box" code that matched the "official winning code" and declared each recipient a winner.

68.   The game piece on Exhibit E had no bearing on whether a recipient won a prize.

69.   All recipients of Exhibit E who attended the sales event were awarded a $5.00 McDonald's gift card as their "prize."

70.   A $5.00 McDonald's gift card was not one of the prizes explicitly referenced on the front of Exhibit E.

71.   No recipient was eligible to win McDonald's for one year, despite the representation on Exhibit D that McDonald's for one year was a potential prize.

### F. Mike Anderson Dodge Sales Event

72.   In August 2016, Traffic Jam Events mailed, or arranged to be mailed, a prize mailing entitled "Authorized Enhanced Trade-In Event" to five thousand (5,000) Indiana recipients. A true and accurate copy of the front and back of an exemplar copy of the "Authorized Enhanced Trade-In Event" prize mailing is attached and marked as Exhibit F.

73.   The sales event advertised on Exhibit F occurred from September 6, 2016 through September 6, 2016, at Mike Anderson Dodge, located at 3527 S. Western Ave, Marion, IN 46953.

74.   Exhibit F contains a game piece that purported to determine whether a recipient was a winner of "$10,000 Cash."

75. Recipients were instructed to scratch-off the game piece included on Exhibit F to determine if their four "amounts" matched for a chance to win.

76. All 5,000 versions of Exhibit F contained four matching "amounts," declaring each recipient a "winner."

77. The game piece on Exhibit F had no bearing on whether a recipient won a prize.

78. No prizes were awarded at the sales event.

**G. <u>Mike Anderson Used Car Superstore Sales Event I</u>**

79. In August 2016, Traffic Jam Events mailed, or arranged to be mailed, a prize mailing entitled "$10,000 Wal-Mart Shopping Spree Card Giveaway" to ten thousand (10,000) Indiana recipients. A true and accurate copy of the front and back of an exemplar copy of the "$10,000 Wal-Mart Shopping Spree Card Giveaway" prize mailing is attached and marked as Exhibit G.

80. The sales event advertised on Exhibit G occurred from August 26, 2016, through August 31, 2016, at Mike Anderson Used Car Superstore, located at 1750 W. Beardsley Ave, Elkhart, IN 46514.

81. Exhibit G contains a game piece that purported to determine whether a recipient was a winner of one of the following prizes: "$10,000 Wal-Mart Shopping Spree Card," "All-New iPad Pro," "up to $500.00 Wal-Mart Gift Card," or "$250.00 Cash in Hand."

82.   Recipients were instructed to scratch-off the game piece included on Exhibit G to determine if their code of numbers matched a "prize combination" code to win.

83.   All 67,000 versions of Exhibit G contained matching codes and declared each recipient a winner.

84.   The game piece on Exhibit G had no bearing on whether a recipient won a prize.

85.   All recipients of Exhibit G who attended the sales event were awarded a $5.00 Wal-Mart gift card as their "prize."

86.   A $5.00 Wal-Mart gift card was not one of the prizes explicitly referenced on the front of Exhibit G.

87.   No recipient was eligible to win a $500.00 Wal-Mart gift card, despite the representation on Exhibit G that a $500.00 Wal-Mart gift card was a potential prize.

### H. **Mike Anderson Used Car Superstore Sales Event II**

88.   In November 2016, Traffic Jam Events mailed, or arranged to be mailed, a prize mailing entitled "$10,000 Pre-Loaded Instant Money Card Giveaway" to five thousand (5,000) Indiana recipients. A true and accurate copy of the front and back of an exemplar copy of the "$10,000 Pre-Loaded Instant Money Card Giveaway" prize mailing is attached and marked as Exhibit H.

89.     The sales event advertised on Exhibit H occurred from November 22, 2016, through November 26, 2016, at Mike Anderson Used Car Superstore, located at 1750 W. Beardsley Ave, Elkhart, IN 46514.

90.     Exhibit H contains a game piece that purported to determine whether a recipient was a winner of one of the following prizes: "$10,000 Pre-Loaded Instant Money Card," "All-New iPad Pro," "McDonald's up to One Year," or $250.00 Cash in Hand.

91.     Recipients were instructed to scratch-off the game piece included on Exhibit H to determine if their code of numbers matched a "prize combination" code to win.

92.     All 5,000 versions of Exhibit H contained matching codes and declared each recipient a winner.

93.     The game piece on Exhibit H had no bearing on whether a recipient won a prize.

94.     All recipients of Exhibit H who attended the sales event were awarded a $5.00 McDonald's gift card as their "prize."

95.     A $5.00 McDonald's gift card was not one of the prizes explicitly referenced on the front of Exhibit H.

96.     No recipient was eligible to win McDonald's for one year, despite the representation on Exhibit H that McDonald's for one year was a potential prize.

## I.  R&B Car Company South Bend Sales Event

97.    In May 2015, Traffic Jam Events mailed, or arranged to be mailed, a prize

mailing entitled "Official Mr. Moneybags Giveaway" to forty-eight thousand

(48,000) Indiana recipients. A true and accurate copy of the front and back of

an exemplar copy of the "Official Mr. Moneybags Giveaway" prize mailing is

attached and marked as Exhibit I.

98.    The sales event advertised on Exhibit I occurred from May 14, 2015, through

May 23, 2015, at R&B Car Company South Bend, located at 3811 S. Michigan

Street, South Bend, IN 46614.

99.    Exhibit I contains a game piece that purported to determine whether a

recipient was a winner of one of the following prizes: "$25,000 Cash,"

"$10,000 Cash," "$5,000 cash," or "up to $1,000 cash."

100.    Recipients were instructed to scratch-off the game piece included on Exhibit I

to determine if their "Winning Game Piece Code" matches the number code

on an "Official Money Chip" which was attached to Exhibit I.

101.    All 48,000 versions of Exhibit I contained an "official money chip" with a

number code matching the recipient's "Winning Game Piece Code," declaring

each recipient a "winner."

102.    Each winning "Official Money Chip" attached to each copy of Exhibit I

prominently states "$25,000."

103.    The money chip on Exhibit I had no bearing on whether a recipient won a

prize.

104.  All recipients of Exhibit I who attended the sales event were awarded $2.00 cash as their "prize."

105.  A $2.00 cash prize was not one of the prizes explicitly referenced on the front of Exhibit I.

106.  No recipient was eligible to win "$1,000 cash," despite the representation on Exhibit I that "$1,000 cash," was a potential prize.

**J.  R&B Car Company Warsaw Sales Event I**

107.  In April 2015, Traffic Jam Events mailed, or arranged to be mailed, a prize mailing entitled "Official Mr. Moneybags Giveaway" to forty-eight thousand (48,000) Indiana recipients. A true and accurate copy of the front and back of an exemplar copy of the "Official Mr. Moneybags Giveaway" prize mailing is attached and marked as Exhibit J.

108.  The sales event advertised on Exhibit J occurred from April 3, 2015, through April 11, 2015, at R&B Car Company Warsaw, located at 2105 N. Biomet Dr., Warsaw, IN 46582.

109.  Exhibit J contains a game piece that purported to determine whether a recipient was a winner of one of the following prizes: "$25,000 Cash," "$10,000 Cash," "$5,000 cash," or "up to $1,000 cash."

110.  Recipients were instructed to scratch-off the game piece included on Exhibit J to determine if their "Winning Game Piece Code" matches the number code on an "Official Money Chip" which was attached to Exhibit J.

111.  All 48,000 versions of Exhibit J contained an "official money chip" with a number code matching the recipient's "Winning Game Piece Code," declaring them a "winner."

112.  Each winning "Official Money Chip" attached to each copy of Exhibit J prominently states "$10,000."

113.  The Money Chip attached to Exhibit J had no bearing on whether a recipient won a prize.

114.  All recipients of Exhibit J who attended the sales event were awarded $2.00 cash as their "prize."

115.  A $2.00 cash prize was not one of the prizes explicitly referenced on the front of Exhibit J.

116.  No recipient was eligible to win "$1,000 cash," despite the representation on Exhibit J that "$1,000 cash," was a potential prize.

### K.  R&B Car Company Warsaw Sales Event II

117.  In May 2015, Traffic Jam Events mailed, or arranged to be mailed, a prize mailing entitled "$10,000 Giveaway Event" to seven thousand ten (7,010) Indiana recipients. A true and accurate copy of the front and back of an exemplar copy of the "$10,000 Giveaway Event" prize mailing is attached and marked as Exhibit K.

118.  The sales event advertised on Exhibit K occurred from May 12, 2015 through May 16, 2015, at R&B Car Company Warsaw, located at 2105 N. Biomet Dr., Warsaw, IN 46582.

119. Exhibit K contains a game piece that purported to determine whether a recipient was a winner of one of the following prizes: "$10,000 Cash," "All New iPad Air 2," "$150 Wal-Mart Gift Card," or "up to $250.00 Cash in Hand."

120. Recipients were instructed to match the number in their "combination box" game piece included on Exhibit K to determine if their numbers matched the "official winning code."

121. All 7,010 versions of Exhibit K had a "combination box" code that matched the "official winning code," and declared each recipient a winner.

122. Each recipient's winning "combination box number" was also listed prominently above the prize listing for the iPad Air 2, indicating recipients won that prize.

123. The game piece on Exhibit K had no bearing on whether a recipient won a prize.

124. All recipients of Exhibit K who attended the sales event were awarded $2.00 cash as their "prize."

125. No recipient won an iPad Air 2, despite the representation on Exhibit K.

126. $2.00 cash was not one of the prizes explicitly referenced on the front of Exhibit K.

**L.  R&B Car Company Warsaw Sales Event III**

127. In May 2015, Traffic Jam Events mailed, or arranged to be mailed, a prize mailing entitled "$10,000 Giveaway Event" to seven thousand ten (7,010)

Indiana recipients. A true and accurate copy of the front and back of an exemplar copy of the "$10,000 Giveaway Event" prize mailing is attached and marked as Exhibit L.

128. The sales event advertised on Exhibit L occurred from May 7, 2015 through May 12, 2015, at R&B Car Company Warsaw, located at 2105 N. Biomet Dr., Warsaw, IN 46582.

129. Exhibit L contains a game piece that purported to determine whether a recipient was a winner of one of the following prizes: "$10,000 Cash," "All New iPad Air 2," "$150 Wal-Mart Gift Card," or "up to "$250.00 Cash in Hand."

130. Recipients were instructed to match the number in their "combination box" game piece included on Exhibit L to determine if their numbers matched the "official winning code."

131. All 7,010 versions of Exhibit L had a "combination box" code that matched the "official winning code" and declared each recipient a winner.

132. The game piece on Exhibit L had no bearing on whether a recipient won a prize.

133. Each recipient's winning "combination box number" was also listed prominently above the prize listing for the iPad Air 2, indicating recipients won that prize.

134. All recipients of Exhibit L who attended the sales event were awarded $2.00 cash as their "prize."

135.   No recipient won an iPad Air 2, despite the representation on Exhibit L.

136.   $2.00 cash was not one of the prizes explicitly referenced on the front of
       Exhibit L.

### M. R&B Car Company Warsaw Sales Event IV

137.   In June 2015, Traffic Jam Events mailed, or arranged to be mailed, a prize
       mailing entitled "$25,000 Giveaway Event" to twenty-six thousand five
       hundred (26,500) Indiana recipients. A true and accurate copy of the front
       and back of an exemplar copy of the "$25,000 Giveaway Event" prize mailing
       is attached and marked as Exhibit M.

138.   The sales event advertised on Exhibit M occurred from June 23, 2015
       through June 27, 2015, at R&B Car Company Warsaw, located at 2105 N.
       Biomet Dr., Warsaw, IN 46582.

139.   Exhibit M contained a game piece that purported to determine whether a
       recipient was a winner of one of the following prizes: "$25,000 Cash," "Two (2)
       New iPad Mini 3s," "$300.00 Shopping Card," or "up to $250.00 Cash in
       Hand."

140.   Recipients were instructed to match the number in their "combination box"
       game piece included on Exhibit M to determine if their numbers matched the
       "official winning code."

141.   All 26,500 versions of Exhibit M had a "combination box" code that matched
       the "official winning code" and declared each recipient a winner.

142.    The game piece on Exhibit M had no bearing on whether a recipient won a
        prize.

143.    All recipients of Exhibit M who attended the sales event were awarded a
        "$300.00 Shopping Card" as their "prize."

**N. R&B Car Company Warsaw Sales Event V**

144.    In December 2015, Traffic Jam Events mailed, or arranged to be mailed, a
        prize mailing entitled "$25,000 Cash Giveaway" to thirty thousand (30,000)
        Indiana recipients. A true and accurate copy of the front and back of an
        exemplar copy of the "$25,000 Cash Giveaway" prize mailing is attached and
        marked as Exhibit N.

145.    The sales event advertised on Exhibit N occurred from December 1, 2015,
        through December 15, 2015, at R&B Car Company Warsaw, located at 2105
        N. Biomet Dr., Warsaw, IN 46582.

146.    Exhibit N contained a game piece that purported to determine whether a
        recipient was a winner of one of the following prizes: "$25,000 Cash," "Two (2)
        New iPad Mini 4s," "$300.00 Shopping Card," or "$250.00."

147.    Recipients were instructed to match a row of matching symbols under the
        pulls tab game piece attached to Exhibit N to determine if they "were a
        certified cash winner!"

148.    All 30,000 versions of Exhibit N had matching symbols of either 3 BARS, or
        alternatively, 3 Sevens, and declared each recipient a winner.

149.   Each prize listed on Exhibit N listed corresponding matching symbols, indicating if a recipient matched those symbols, they won that specific prize.

150.   On information and belief, all versions of Exhibit N contained matching symbols that corresponded to either the iPad Mini or $250 cash prizes.

151.   On information and belief, no version of Exhibit N contained matching symbols that corresponded to the $300.00 Shopping Card Prize.

152.   The game piece on Exhibit N had no bearing on whether a recipient won a prize.

153.   All recipients of Exhibit N who attended the sales event were awarded a "$300.00 Shopping Card" as their "prize."

**O.  <u>Ray Skillman Hoosier Ford Event I</u>**

154.   In May 2016, Traffic Jam Events mailed, or arranged to be mailed, a prize mailing entitled "$10,000 Giveaway Event" to ten thousand (10,000) Indiana recipients. A true and accurate copy of the front and back of an exemplar copy of the "$10,000 Giveaway Event" prize mailing is attached and marked as Exhibit O.

155.   The sales event advertised on Exhibit O occurred from May 17, 2016 through May 31, 2016, at Ray Skillman Hoosier Ford, located at 433 Robert Curry Drive, Martinsville, IN 46151.

156.   Exhibit O contained a game piece that purported to determine whether a recipient was a winner of one of the following prizes: "$10,000 Cash," "Two (2)

All-New iPad Mini 4s," "McDonald's For up to One Year," or "$250.00 Cash in Hand."

157.   Recipients were instructed to match the number on their "combination box" game piece included on Exhibit O to determine if their numbers matched the "official winning code."

158.   All 60,000 versions of Exhibit O had a "combination box" code that matched the "official winning code," and declared each recipient a winner.

159.   The game piece on Exhibit O had no bearing on whether a recipient won a prize.

160.   All recipients of Exhibit O who attended the sales event were awarded a $5.00 McDonald's gift card as their "prize."

161.   A $5.00 McDonald's Gift card was not one of the prizes explicitly referenced on the front of Exhibit O.

162.   No recipient was eligible to win McDonald's for one year, despite the representation on Exhibit O that McDonald's for one year was a potential prize.

**P. <u>Ray Skillman Hoosier Ford Sales Event II</u>**

163.   In September 2016, Traffic Jam Events mailed, or arranged to be mailed, a prize mailing entitled "$10,000 Wal-Mart Shopping Spree Card Giveaway" to ten thousand (10,000) Indiana recipients. A true and accurate copy of the front and back of an exemplar copy of the "$10,000 Wal-Mart Shopping Spree Card Giveaway" prize mailing is attached and marked as Exhibit P.

24

164. The sales event advertised on Exhibit P occurred from September 20, 2016, through October 1, 2016, at Ray Skillman Hoosier Ford, located at 433 Robert Curry Drive, Martinsville, IN 46151.

165. Exhibit P contained a game piece that purported to determine whether a recipient was a winner of one of the following prizes: "$10,000 Wal-Mart Shopping Spree Card," "All-New Ipad Pro," "up to $500.00 Wal-Mart Gift Card," or "$250.00 Cash in Hand."

166. Recipients were instructed to scratch-off the game piece included on Exhibit P to determine if their code of numbers matched a winning code to win.

167. All 10,000 versions of Exhibit P contained a matching code and declared each recipient a winner.

168. The game piece on Exhibit P had no bearing on whether a recipient won a prize.

169. All recipients of Exhibit P who attended the sales event were awarded a $5.00 Wal-Mart gift card as their "prize."

170. A $5.00 Wal-Mart gift card was not one of the prizes explicitly referenced on the front of Exhibit P.

171. No recipient was eligible to win a $500.00 Wal-Mart gift card, despite the representation on Exhibit P that a $500.00 Wal-Mart gift card was a potential prize.

**Q. <u>Ray Skillman Kia Mitsubishi Sales Event I</u>**

172.   In June 2016, Traffic Jam Events mailed, or arranged to be mailed, a prize mailing entitled "Authorized Enhanced Trade-In Event" to seven thousand, five hundred (7,500) Indiana recipients. A true and accurate copy of the front and back of an exemplar copy of the "Authorized Enhanced Trade-In Event" prize mailing is attached and marked as Exhibit Q.

173.   The sales event advertised on Exhibit Q occurred from June 28, 2016 through July 2, 2016, at Ray Skillman Kia Mitsubishi, located at 1300 North Shadeland Avenue, Indianapolis, IN 46219.

174.   Exhibit Q contained a game piece that purported to determine whether a recipient was a winner of "$5,000 Cash."

175.   Recipients were instructed to scratch-off the game piece included on Exhibit Q to determine if their four numbers matched for a chance to win.

176.   All 5,000 versions of Exhibit Q contained four matching numbers, declaring each recipient to be a "winner."

177.   The game piece on Exhibit Q had no bearing on whether a recipient won a prize.

178.   No prizes were awarded at the sales event.

**R.   <u>Ray Skillman Kia Mitsubishi Sales Event II</u>**

179.   In October 2016, Traffic Jam Events mailed, or arranged to be mailed, a prize mailing entitled "$5,000 Wal-Mart Shopping Spree Card Giveaway" to ten thousand (10,000) Indiana recipients. A true and accurate copy of the front

and back of an exemplar copy of the "$5,000 Wal-Mart Shopping Spree Card Giveaway" prize mailing is attached and marked as Exhibit R.

180.   The sales event advertised on Exhibit R occurred from October 21, 2016, through November 12, 2016, at Ray Skillman Kia Mitsubishi, located at 1300 North Shadeland Avenue, Indianapolis, IN 46219.

181.   Exhibit R contained a game piece that purported to determine whether a recipient was a winner of one of the following prizes: "$10,000 Wal-Mart Shopping Spree Card," "All-New iPad Pro," "$250.00 Wal-Mart Gift Card," or "$300.00 Shopping Card."

182.   Recipients were instructed to scratch-off the game piece included on Exhibit R to determine if their code of numbers matched a winning code to win.

183.   All 10,000 versions of Exhibit R contained a matching code and declared each recipient a winner.

184.   The game piece on Exhibit R had no bearing on whether a recipient won a prize.

185.   All recipients of Exhibit R who attended the sales event were awarded a "$300.00 Shopping Card" as their "prize."

**S.   Ray Skillman Kia Mitsubishi Sales Event III**

186.   In March 2017, Traffic Jam Events mailed, or arranged to be mailed, a prize mailing entitled "The Black Card VIP Private Experience" to ten thousand, (10,000) Indiana recipients. A true and accurate copy of the front and back of

an exemplar copy of the "The Black Card VIP Private Experience" prize mailing is attached and marked as Exhibit S.

187. The sales event advertised on Exhibit S occurred from March 1, 2017 through March 20, 2017, at Ray Skillman Kia Mitsubishi, located at 1300 North Shadeland Avenue, Indianapolis, IN 46219.

188. Exhibit S contains a game piece that purported to determine whether a recipient was a winner of "$5,000 Cash."

189. Recipients were instructed to scratch-off the game piece included on Exhibit S to determine if their four symbols matched for a chance to win.

190. All 5,000 versions of Exhibit S contained four matching symbols.

191. The game piece on Exhibit S had no bearing on whether a recipient won a prize.

192. No prizes were awarded at the sales event.

### 3. Facts Common to All Exhibits

193. Exhibits A through S do not contain the name and address of the promotor of the respective sales events, Traffic Jam Events.

194. Exhibits A through S do not contain statements of the odds of winning each prize in the immediate proximity to each listing of the prize in each place it appears on each Exhibit, in the same size type and boldness of the prize.

195. Exhibits A through S do not contain statements of the verifiable retail value of each prize in the immediate proximity to each listing of the prize in each

place it appears on each Exhibit, in the same size type and boldness of the prize.

196. Exhibits A through S do not contain disclosures that recipients may be required or invited to hear a sales presentation to claim their prize.

4. <u>Facts Regarding the $300.00 Shopping Card</u>

197. Many of the sales events referenced above awarded all attendees with a "$300.00 Shopping Card" as their "prize."

198. The "$300.00 Shopping Card" allowed recipients to purchase up to three hundred dollars ($300.00) worth of trinkets on the website goshoppingmall.com.

199. However, in order for recipients to purchase items using the "$300.00 Shopping Card," recipients are required to pay shipping and handling as well as a processing fee of $5.00 for all orders on goshoppingmall.com.

200. The Exhibits referenced in this Complaint which represent the "$300.00 Shopping Card" as a potential prize failed to disclose that an additional purchase by the recipient in the form of shipping fees and processing fees would be required to utilize the prize.

201. On information and belief, if recipients spent their entire "$300.00 Shopping Card," on goshoppingmall.com, they would end up paying more in processing fees and shipping and handling than the verifiable retail value of the items they ordered.

## IV. <u>CAUSES OF ACTION</u>

<u>COUNT I:</u>
<u>VIOLATIONS OF THE PROMOTIONAL GIFTS AND CONTESTS ACT</u>

202.   The State realleges Paragraphs 1 through 201 of this Complaint.

203.   Exhibits A through S, as referenced in this Complaint, were sent by mail to persons located in Indiana.

204.   The Defendant violated Ind. Code § 24-8-3-2, by failing to include the name and address of the promotor of the respective promotions in notices mailed to consumers, as asserted in Paragraph 193.

205.   The Defendant violated Ind. Code § 24-8-3-5, by failing to include a statement of the odds of winning each prize in immediate proximity to each listing of a prize in each place it appears on a notice, listed in the same size type and boldness of the prize, as asserted in Paragraph 194.

206.   The Defendant violated Ind. Code § 24-8-3-5, by failing to include a statement of the verifiable retail value of each prize in immediate proximity to each listing of a prize in each place it appears on a notice, listed in the same size type and boldness of the prize, as asserted in Paragraph 195.

207.   The Defendant violated Ind. Code § 24-8-3-6, by failing to include a disclosure that recipients of notices may be required or invited to hear a sales presentation in order to claim their prize, as asserted in Paragraph 196.

208.   The Defendant violated Ind. Code § 24-8-3-7, by failing to include a disclosure that recipients of the "$300.00 Shopping Card" would be required make an additional purchase in the form of shipping and processing fees in order to utilize the prize, as asserted in Paragraph 200.

<u>COUNT II:</u>

<u>VIOLATIONS OF THE DECEPTIVE CONSUMER SALES ACT-</u>
<u>MISREPRESENTING RECIPIENTS WON SPECIFIC PRIZES</u>

209.    The State realleges Paragraphs 1 through 208 of this Complaint.

210.    The transactions identified in Paragraph 33-34, 40-41, 47-48, 54-55, 63-64,

72-73, 79-80, 88-89, 97-98, 107-108, 117-118, 127-128, 137-138, 144-145, 154-

155, 163-164, 172-173, 179-180 and 186-187 are "consumer transactions" as

defined by Ind. Code § 24-5-0.5-2(1).

211.    The Defendant is a "supplier" as defined by Ind. Code § 24-5-0.5-2(3).

212.    The Defendant, through its sending of prize mailings which represented or

implied the recipient won a specific prize when they did not, violated Ind.

Code § 24-5-0.5-3(a) by committing unfair, abusive, and deceptive acts,

omissions, and practices in connection with consumer transactions, as

asserted in Paragraphs 6 through 201.

213.    The Defendant, through its representations that the recipient of prize

mailings won a specific prize when they did not, violated Ind. Code § 24-5-0.5-

3(b)(1) by representing that consumer transactions had characteristics or

benefits they did not have, which the Defendant knew or reasonably should

have known it did not have, as asserted in Paragraphs 6 through 201.

<u>COUNT III:</u>

<u>VIOLATIONS OF THE DECEPTIVE CONSUMER SALES ACT-</u>
<u>MISREPRESENTING RECIPIENTS WERE WINNERS</u>

214.    The State realleges Paragraphs 1 through 213 of this Complaint.

215.   The Defendant, through its sending of prize mailings which represented the recipient was a "winner" when all consumers received identical nominal prizes and thus were not a "winner," violated Ind. Code § 24-5-0.5-3(a) by committing unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, as asserted in Paragraphs 6 through 201.

<u>COUNT IV:</u>
<u>VIOLATIONS OF THE DECEPTIVE CONSUMER SALES ACT-</u>
<u>FAILURE TO AWARD PRIZES</u>

216.   The State realleges Paragraphs 1 through 215 of this Complaint.

217.   The Defendant, through its failure to award prizes prominently displayed on prize mailings and instead awarding nominal prizes not referenced on the prize mailings, violated Ind. Code § 24-5-0.5-3(a) by committing unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, as asserted in Paragraphs 6 through 201.

<u>COUNT V:</u>
<u>VIOLATIONS OF THE DECEPTIVE CONSUMER SALES ACT-</u>
<u>FAILURE TO DISCLOSE ADDITIONAL CHARGES</u>

218.   The State realleges Paragraphs 1 through 217 of this Complaint.

219.   The Defendant, through its failure to disclose that the "300.00 Shopping Card" did not have a retail value of $300.00, and required additional shipping and processing charges, violated Ind. Code § 24-5-0.5-3(a) by committing unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, as asserted in Paragraphs 6 through 201.

<u>COUNT VI:</u>
<u>VIOLATIONS OF THE DECEPTIVE CONSUMER SALES ACT-</u>
<u>MISREPRESENTING RESULTS OF GAME PIECE</u>

220.   The State realleges Paragraphs 1 through 219 of this Complaint.

221.   The Defendant, through its representations that the game piece located on

Exhibits A though S determined whether a consumer won a prize, when it did

not, violated Ind. Code § 24-5-0.5-3(b)(1) by representing that consumer

transactions had characteristics, uses or benefits they did not have, which the

Defendant knew or reasonably should have known they did not have, as

asserted in Paragraphs 6 through 201.

<u>COUNT VII:</u>
<u>VIOLATIONS OF THE DECEPTIVE CONSUMER SALES ACT-</u>
<u>VIOLATIONS OF THE PROMOTIONAL GIFTS AND CONTESTS ACT</u>

222.   The State realleges Paragraphs 1 through 221 of this Complaint.

223.   The Defendant's violations of the Promotional Gifts and Contests Act, as

asserted in Paragraphs 204-208, constitute Deceptive Acts pursuant to Ind.

Code § 24-8-6-3.

<u>COUNT VIII:</u>
<u>KNOWING VIOLATIONS OF THE DECEPTIVE CONSUMER SALES ACT</u>

224.   The State realleges Paragraphs 1 through 223 of this Complaint.

225.   The Defendant committed the deceptive acts asserted in Paragraphs 209

through 223 with knowledge of its deceptive acts.

<u>COUNT IX:</u>
<u>INCURABLE DECEPTIVE ACTS</u>

226.   The State realleges Paragraphs 1 through 225 of this Complaint.

227.   The deceptive acts asserted in Paragraphs 209 through 223 are incurable

deceptive acts and were committed by the Defendant as part of a scheme,

artifice, or device with intent to defraud or mislead.

## V. <u>RELIEF</u>

228.   The State requests the Court enter judgment against the Defendant, Traffic

Jam Events, LLC for the relief described in Paragraphs 229 through 234 of

this Complaint.

229.   The State seeks a permanent injunction, under Ind. Code § 24-5-0.5-4(c)(1),

enjoining Traffic Jam Events, LLC, and its agents, representatives,

employees, successors, and assigns, from:

229.1. Failing to include the following in any notice mailed to Indiana

consumers representing to award a prize, or the chance at a prize, to

the recipient:

229.1.1  the name and address of the promotor, Traffic Jam Events,

LLC;

229.1.2  a statement of the odds of winning each prize in immediate

proximity to each listing of a prize in each place it appears on

a notice, listed in the same size type and boldness of the

prize;

229.1.3  a statement of the verifiable retail value of each prize in

immediate proximity to each listing of a prize in each place it

appears on a notice, listed in the same size type and boldness of the prize;

 229.1.4 a disclosure that recipients of notices may be required or invited to hear a sales presentation in order to claim their prize;

 229.1.5 a conspicuous disclosure on the first page of the notice in at least 10 point font that recipients of a prize would be required make an additional purchase, including shipping and processing fees, in order to utilize the prize;

229.2. representing on prize notice mailings that a consumer has won a specific prize when the consumer has not;

229.3. representing in any medium, including mailings, telephone, live operator, recording, or website, that a consumer is a "winner," or has "won," unless the consumer has won a prize the majority of other recipients of the same mailing could not receive;

229.4. awarding a prize that is not explicitly prominently referenced on the front of the prize mailing;

229.5. representing a game piece on a direct mailing determines whether a recipient wins a prize, when the game piece is identical for each consumer and does not determine whether the recipient actually won a prize;

35

229.6. committing any unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction, in violation of Ind. Code § 24-5-0.5- 3(a);

229.7. representing that the subject of a consumer transaction has characteristics or benefits that it does not have, which the Defendants know or reasonably should know it does not have, in violation of Ind. Code § 24-5-0.5-3(b)(1).

230. The State seeks consumer restitution, under Ind. Code § 24-8-6-2(2), for all persons who were mailed Exhibits A through S and attended the corresponding sales events advertised on the Exhibits A through S, in the amount of five hundred dollars ($500.00) per person, payable to the Office of the Attorney General, for the benefit of those persons.

231. The State seeks costs, under Ind. Code § 24-5-0.5-4(c)(4), awarding the Office of the Attorney General its reasonable expenses incurred in the investigation and prosecution of this action.

232. The State seeks civil penalties, under Ind. Code § 24-5-0.5-4(g), on Count XII of this Complaint, for the Defendant's knowing violations of Ind. Code § 24-5-0.5-3(a) and Ind. Code § 24-5-0.5-3(b)(1), in the amount of five thousand dollars ($5,000.00) per violation, payable to the State of Indiana.

233. The State seeks civil penalties, under Ind. Code § 24-5-0.5-8, on Count IX of this Complaint, for the Defendant's incurable deceptive acts, in the amount of five hundred dollars ($500.00) per violation, payable to the State of Indiana.

36

234.   The State seeks all other just and proper relief.

Respectfully submitted,

CURTIS T. HILL, JR.
INDIANA ATTORNEY GENERAL
Attorney Number 13999-20

By:   /s/ Mark M. Snodgrass
Mark M. Snodgrass
Deputy Attorney General
Attorney Number 29495-49

Office of Attorney General
Indiana Government Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-6784
Fax: (317) 233-4393
Mark.Snodgrass@atg.in.gov

# ATTACHMENT H

Filed: 2/7/2019 5:48 PM
Clerk
Marion County, Indiana

STATE OF INDIANA
IN THE MARION COUNTY SUPERIOR COURT

CAUSE NO. 49D10-1806-PL-021546

| | |
|---|---|
| STATE OF INDIANA, | |
| Plaintiff, | |
| v. | **CONSENT AGREEMENT** |
| TRAFFIC JAM EVENTS, LLC, | |
| Defendant. | |

## I. INTRODUCTION

1.  The State of Indiana, by Attorney General Curtis T. Hill, Jr. and Deputy Attorney General Mark M. Snodgrass, having filed its Complaint for Injunction, Restitution, Civil Penalties and Costs, and the Defendant, Traffic Jam Events, LLC, hereby enter into this Consent Agreement without trial and adjudication of any issue of fact or law.

2.  The parties believe it is in their best interest to resolve the issues presented by the State of Indiana and avoid further litigation with regard to the issues addressed in this Consent Agreement.

3.  This Consent Agreement is for settlement purposes only and does not constitute an admission by Traffic Jam Events, LLC that the Indiana's Deceptive Consumer Sales Act, Indiana Code § 24-5-0.5-1 *et seq.*, or the Promotional Gifts and Contests Act, Ind. Code § 24-8-1 *et seq.* have been violated or that the facts, other than the jurisdictional facts, alleged in the

1

Complaint are true, nor shall it be construed as an abandonment by the Attorney General of his position that Traffic Jam Events, LLC violated the above referenced statutes.

4. The parties consent to entry of judgment in this proceeding by the Court and accept this Consent Agreement as the final adjudication of this civil action.

5. Upon execution by all required parties, the State will file a Motion to Approve this Consent Agreement with the Court.

6. The terms of this Consent Agreement shall have the full force and effect of a Judgment issued by the Court upon the Court's approval of this Consent Agreement and no agreement, understanding, representation, or interpretation not contained in the order may be used to vary or contradict the terms of the order.

## II. RELIEF

7. The parties consent to the Court entering Judgment in favor of the State of Indiana for the relief described in Paragraphs 8 through 13 of this Consent Agreement.

8. Pursuant to Ind. Code §24-5-0.5-4(c)(1), the Defendant, Traffic Jam Events, LLC, its agents, representatives, employees, successors, and assigns are permanently enjoined from engaging in the following with respect to any mailings directed to Indiana consumers:

2

EXHIBIT A

8.1. Failing to include the following in any notice mailed to Indiana consumers representing to award a prize, or the chance at a prize, to the recipient:

    8.1.1   the name and address of the promotor, Traffic Jam Events, LLC;

    8.1.2   a statement of the odds of winning each prize in immediate proximity to each listing of a prize in each place it appears on a notice, listed in the same size type and boldness of the prize;

    8.1.3   a statement of the verifiable retail value of each prize in immediate proximity to each listing of a prize in each place it appears on a notice, listed in the same size type and boldness of the prize;

    8.1.4   a disclosure that recipients of notices may be required or invited to hear a sales presentation in order to claim their prize;

    8.1.5   a conspicuous disclosure on the first page of the notice in at least 10 point font that recipients of a prize would be required make an additional purchase, including shipping and processing fees, in order to utilize the prize, if such a purchase is necessary;

EXHIBIT A

8.2. representing on prize notice mailings that a consumer has won a specific prize when the consumer has not;

8.3. representing in any medium, including mailings, telephone, live operator, recording, or website, that a consumer is a "winner," or has "won," unless the consumer has won a prize the majority of other recipients of the same mailing could not receive;

8.4. awarding a prize that is not explicitly and prominently referenced on the front of the prize mailing;

8.5. representing a game piece on a notice determines whether a recipient wins a prize, when the game piece is identical for each consumer and does not determine whether the recipient actually won a prize;

8.6. committing any unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction, in violation of Ind. Code § 24-5-0.5- 3(a);

8.7. representing that the subject of a consumer transaction has characteristics or benefits that it does not have, which Traffic Jam Events, LLC knows or reasonably should know it does not have, in violation of Ind. Code § 24-5-0.5-3(b)(1).

9.   Traffic Jam Events, LLC agrees to provide the Attorney General with an exemplar copy of any future notice mailed to Indiana consumers representing to award the recipient a prize, or the chance at a prize. Service of each exemplar notice must be made upon the Attorney General no later than two

4

(2) weeks after the notice was mailed to recipients. This provision expires three (3) years from the date of the execution of this Assurance. Service of the exemplar notices can be made to the following:

Mark Snodgrass
Deputy Attorney General
Office of the Indiana Attorney General
302 West Washington Street, 5th Floor
Indianapolis, IN 46204

10. Traffic Jam Events, LLC shall not represent that the Office of the Attorney General approves or endorses Traffic Jam Events, LLC's past or future business practices, or that execution of this Consent Decree constitutes such approval or endorsement. Nor shall Traffic Jam Events, LLC represent, orally or in writing, that its notices or mailings have been reviewed or approved by the Attorney General.

11. Traffic Jam Events, LLC agrees to fully cooperate with any litigation the Attorney General has brought, or may bring, against any auto dealer referenced in the State's Complaint on whose behalf Traffic Jam Events, LLC sent Prize Mailings. "Full cooperation" means providing complete, candid, and truthful testimony under oath at any proceedings brought by the Attorney General against such auto dealers. Additionally, Traffic Jam Events, LLC agrees to voluntarily provide any non-privileged information in its possession pertaining such auto dealers at the Attorney General's request. This includes providing requested information, documents, and making relevant employees available to speak to representatives of the Attorney General.

5

12.   Traffic Jam Events, LLC shall pay a Civil Penalty under Ind. Code § 24-5-0.5-4(g) and Ind. Code § 24-5-0.5-8 in the amount of One Dollar ($1.00) per offending Prize Mailing sent to Indiana recipients within the relevant statute of limitations. Traffic Jam Events, LLC sent, or caused to be sent, 57,500 offending Prize Mailings to Indiana recipients, resulting in a Civil Penalty in the total amount of Fifty-Seven Thousand, Five Hundred Dollars ($57,500.00). The Civil Penalty shall be payable to the Office of the Attorney General and may be used for any purpose allowable under state law. The Civil Penalty will be paid in two equal installments, with the first installment of Twenty-Eight Thousand, Seven Hundred Fifty Dollars ($28,750.00) due within thirty (30) days of the approval of the Consent Agreement by the Court, and the second installment of Twenty-Eight Thousand, Seven Hundred Fifty Dollars ($28,750.00) due no later than six (6) months from the date of the execution of this Consent.

## III. CONTINUING JURISDICTION

13.   The Court shall retain jurisdiction for the purpose of issuing such orders as may be necessary to interpret or enforce the provisions herein.  This Consent Agreement will terminate ten (10) years from the date of its issuance.

EXHIBIT A

IN WITNESS WHEREOF, the parties have executed this Consent Agreement this _7th_ day of _February_, 2019.

STATE OF INDIANA

CURTIS T. HILL, JR.
INDIANA ATTORNEY GENERAL
Attorney Number 13999-20

By: _____
Mark M. Snodgrass
Deputy Attorney General
Attorney Number 29495-49

Office of Attorney General
Indiana Government Center South
302 West Washington St., 5th Floor
Indianapolis, IN 46204
Telephone: (317) 234-6784
Fax: (317) 233-4393
Mark.Snodgrass@atg.in.gov

DEFENDANT

TRAFFIC JAM EVENTS, LLC

By: _____

Name: _DAVID TRANSCIUTE_

Title: _PRESIDENT_

7

EXHIBIT A

# ATTACHMENT I



# ATTACHMENT J

URGENT: FCA FIAT CHRYS...
ALL PAYMENTS DEFERRED FOR ...



**New 2020 Fiat 500 Pop**
Starting at $209 per mo.



**New 2020 Jeep Renegade**
Starting at $232 per mo.



**New 2020 Dodge Grand Caravan**
Starting at $260 per mo.



**New 2020 Chrysler 300**
Starting at $272 per mo.



**New 2020 Dodge Challenger**
Starting at $277 per mo.



**New 2020 Ram 1500 Big Horn**
Starting at $375 per mo.



PRSRT MARKETING
U.S. POSTAGE
**PAID**
PERMIT 11
STATESBORO, GA

...KED MAIL: OPEN IMMEDIATELY

TIME-SENSITIVE CONTENTS:
OPEN IMMEDIATELY.
Contents must be packed securely to
ensure safe, on-time delivery. Package is
tracked nationwide. No liquids allowed.
DO NOT BEND OR BREAK.

**ECONOMIC STIMULUS
DOCUMENTS ENCLOSED**